NO. 4-06-0674          Filed 4/18/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| SHEILA M. WILLS, PATRICK BROOKS, and JUNE WILLIAMS, | ) ) | Appeal from Circuit Court of |
| Plaintiffs-Appellants, | ) | Sangamon County |
| v. | ) | No. 03L36 |
| INMAN E. FOSTER, JR., and CHARLENE R. FOSTER, | ) ) | Honorable |
| Defendants-Appellees. | ) | Patrick W. Kelley, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Sheila M. Wills, seeks review of the trial court's order reducing the jury's personal-injury award for compensatory damages from $80,163.47 to $19,005.50. Plaintiff claims the collateral-source rule applies and entitles her to the recovery of the amount of medical expenses billed, not the amount of medical expenses actually paid at a discounted rate. Defendant Inman E. Foster, Jr., the tortfeasor, argues the collateral-source rule does not apply to this case because the medical expenses were paid through Medicare or Medicaid, which provides health benefits to certain needy individuals. Plaintiff did not incur liability for her medical expenses, did not bargain for her coverage, and did not pay any premiums as part of a contractual relationship. Therefore, defendant claims the governmental medical benefits do not qualify as a "collateral source" under the collateral-source rule. We affirm.

## I. BACKGROUND

On August 8, 2001, plaintiff and her two passengers, coplaintiffs Patrick Brooks and June Williams, were injured in an automobile accident. Defendant drove his vehicle, which was allegedly owned by codefendant Charlene R. Foster, through a red light and struck plaintiff's vehicle. (The allegations against Charlene R. Foster were dismissed with prejudice, and Brooks and Williams settled their claims prior to trial.) As a result of the accident, plaintiff aggravated a preexisting condition, which proximately caused the need to undergo a spinal-cord fusion. Defendant's liability is not an issue on appeal.

Prior to trial, both parties filed respective motions in limine concerning the amounts of plaintiff's medical bills that would be presented to the jury. The amount of medical expenses billed was $80,163.47; however, the amount actually paid by Medicare and the medical-assistance program of the Illinois Department of Healthcare and Family Services (DHFS or Medicaid) on plaintiff's behalf was $19,005.50. Plaintiff sought to introduce the evidence of her medical bills in the amount of $80,163.47, while defendant sought to limit the evidence to the medical bills that were actually paid in the amount of $19,005.05. The trial court denied defendant's motion and granted plaintiff's, allowing the jury to consider $80,163.47 as the amount of plaintiff's medical expenses.

On March 20, 2006, the case proceeded to a jury trial with Judge Patrick E. Kelley presiding. Defendant stipulated to the admission of plaintiff's exhibit, which demonstrated medical bills totalling $80,163.47. The jury entered a verdict for plaintiff in that amount in medical expenses and $7,500 in pain and suffering. On April 17, 2006, defendant filed a posttrial motion, asking the trial court to reduce the amount of the jury's award from $80,163.77 to $19,005.50. On July 14, 2006, the court, Judge Leo Zappa presiding, allowed defendant's motion reducing the jury's award as requested. The court's order provided as follows: "In the event plaintiff's medical providers seek to recover from plaintiff the difference between the amount shown on the ledgers and the amount paid by the Illinois Department of Public Aid or Medicare, plaintiff may within one year from the date of this order petition the court for a revision of this order. The jury's award of $7,500 for pain and suffering remains in effect." On July 25, 2006, Judge Kelley entered an identical order. This appeal followed.

## II. ANALYSIS

In her appeal, plaintiff claims the trial court erred in failing to apply the collateral-source rule, thereby reducing her compensatory-damages award. In support of her claim, plaintiff likens herself to the plaintiff in Arthur v. Catour, 216 Ill. 2d 72, 833 N.E.2d 847 (2005). In response, defendant argues

- 3 -

Arthur is distinguishable and the collateral-source rule does not apply. Because the facts are uncontroverted and the issue before this court is the trial court's application of the law to the facts, our review is de novo. Arthur, 216 Ill. 2d at 78, 833 N.E.2d at 851.

In Arthur, our supreme court held that the injured plaintiff could present to the jury the amount she was initially billed for health-care services, rather than the amount that her private insurance company actually paid to the health-care providers. Arthur, 216 Ill. 2d at 83, 833 N.E.2d at 854. Through her insurer's contractual agreements with the providers, many of the charges for health-care services were discounted. The health-care providers accepted the discounted amounts as payment in full. The court held that the plaintiff could present the amount billed, but she was required to establish that amount as a reasonable charge for the services rendered. In turn, the defendant could counter with any evidence that the amount was not reasonable. Arthur, 216 Ill. 2d at 83, 833 N.E.2d at 854.

In its analysis, the supreme court described the collateral-source rule as follows: "'[B]enefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recover-able from the tortfeasor.'" Arthur, 216 Ill. 2d at 78, 833 N.E.2d at 851, quoting Wilson v. Hoffman Group, Inc., 131 Ill. 2d

308, 320, 546 N.E.2d 524, 530 (1989). "The collateral[-]source rule protects collateral payments made to or benefits conferred on the plaintiff by denying the defendant any corresponding offset or credit. Such collateral benefits do not reduce the defendant's tort liability, even though they reduce the plaintiff's loss." Arthur, 216 Ill. 2d at 78, 833 N.E.2d at 851. "The rule operates to prevent the jury from learning anything about collateral income." Arthur, 216 Ill. 2d at 79, 833 N.E.2d at 852.

"'The justification for [the collateral-source] rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.'" Arthur, 216 Ill. 2d at 79, 833 N.E.2d at 852, quoting Wilson, 131 Ill. 2d at 320, 546 N.E.2d at 530. The Arthur court noted that the application of the collateral-source rule does not prevent the plaintiff from introducing as evidence the reasonable cost of health care necessitated by the defendant's conduct. Arthur, 216 Ill. 2d at 80, 833 N.E.2d at 852. The plaintiff was liable for the resulting expenses upon receipt of those services. The fact that the insurance provider and the health-care provider agreed to satisfy plaintiff's obligation in full by paying a lesser amount than that billed is not of consequence. That payment arrangement was a result of a contractual arrangement

between the insurer and the provider, a contractual arrangement to which the plaintiff was not privy. <u>Arthur</u>, 216 Ill. 2d at 81, 833 N.E.2d at 853. The effect of that arrangement resulted in the "plaintiff receiv[ing] the benefit of her bargain with her insurance company--full coverage for incurred medical expenses." <u>Arthur</u>, 216 Ill. 2d at 81, 833 N.E.2d at 853.

We must determine whether the court's analysis and holding in <u>Arthur</u> apply equally to plaintiff's case when plaintiff was not required to bargain for her benefits but received them free of charge from the government based on her status. After carefully considering the reasoning and justification behind the court's holding, we conclude that because the benefits conferred upon plaintiff did not result from a bargained-for exchange with a third party who provided the benefits, the collateral-source rule does not apply.

The collateral-source rule is an exception to the general rule of damages preventing a double recovery by an injured party. See <u>Muranyi v. Turn Verein Frisch-Auf</u>, 308 Ill. App. 3d 213, 215, 719 N.E.2d 366, 369 (1999). Typically, however, the collateral source will have a lien or subrogation right that prevents a double recovery. The collateral-source rule operates as both a rule of damages and a rule of evidence. <u>Arthur</u>, 216 Ill. 2d at 79-80, 833 N.E.2d at 852. As to damages, the rule prevents any reduction of a plaintiff's recovery due to

amounts received from third parties, which are "collateral" from the tortfeasor. Arthur, 216 Ill. 2d at 80, 833 N.E.2d at 852. As a rule of evidence, it prevents juries from learning anything about collateral income that could affect their assessment of damages. Arthur, 216 Ill. 2d at 79, 833 N.E.2d at 852. The rationale for the rule is that the defendant should not be allowed to benefit from the plaintiff's foresight in acquiring insurance. Arthur, 216 Ill. 2d at 79, 833 N.E.2d at 852.

Another purpose of the collateral-source rule is to serve as a deterrent to a tortfeasor. Restatement (Second) of Torts §901(c) (1979). The defendant should not benefit from his wrongful act by being allowed to pay a lesser amount of damages than he has caused. Logically, if such is allowed, the deterrent effect will be diminished. In this vein, it follows that a tortfeasor should not get a break if he harms a needy person whose medical bills were paid by Medicaid.

Although the Arthur court held that a plaintiff may present evidence of prediscounted medical bills, it did so in the context of a plaintiff with a contractual arrangement with a private insurance company. The court did not reassess or even discuss its previous decision in Peterson v. Lou Bachrodt Chevro-let Co., 76 Ill. 2d 353, 363, 392 N.E.2d 1, 5 (1979), where the court forbade recovery when the plaintiff had not incurred any liability. In effect, the Arthur holding created what seemed to

- 7 -

be a windfall in favor of the plaintiff. We discern that the primary reason for such a holding was the existence of the insurance contract. This would explain the justification for allowing an apparent windfall for the plaintiff--a concept that had been earlier rejected in Peterson. See Peterson, 76 Ill. 2d at 363, 392 N.E.2d at 5-6. Perhaps the Arthur court presumed the insurance company would enforce a subrogation lien.

Because the Arthur court did not specifically overrule Peterson, we must continue to follow Peterson as it is the case more factually similar to the case sub judice. In Peterson, the plaintiffs sued an automobile dealer after the plaintiff's daughter was killed and his son was injured in an accident, allegedly caused by a defective braking system in a used car sold by the dealer to a third party. The court addressed the issue of whether the plaintiff could recover the value of free medical services rendered by the Shriners' Hospital for Crippled Children in performing surgery on the plaintiff's son's leg. Relying on the court's decision in Jones & Adams Co. v. George, 227 Ill. 64, 69, 81 N.E. 4, 6 (1907), which held that a plaintiff could not recover for the value of nursing services rendered by the plaintiff's family, the Peterson court held that "[a]n individual is not entitled to recover for the value of services that he has obtained without expense, obligation, or liabililty." Peterson, 76 Ill. 2d at 362, 392 N.E.2d at 5.

The court found that "the policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation." Peterson, 76 Ill. 2d at 362, 392 N.E.2d at 5. The court noted that the justification for the rule was the ideal that the "'wrongdoer should not benefit from the expenditures made by the injured party in procuring insurance coverage.'" (Emphasis in original.) Peterson, 76 Ill. 2d at 362-63, 392 N.E.2d at 5, quoting 22 Am. Jur. 2d Damages §210, at 293-94 (1965). Without an expenditure, liability, or obligation on the plaintiff's part, application of the rule was not justified. The court refused to apply the rule, noting that the purpose of compensatory damages was to compensate, not to punish the defendant or to create a windfall in the plaintiff's favor. Peterson, 76 Ill. 2d at 363, 392 N.E.2d at 5.

Although this issue is a matter of first impression in Illinois, other states have considered whether Medicare benefits are an acceptable collateral source to come within the purview of the rule. For example, Florida and Idaho have held that Medicare benefits are not a collateral source and not recoverable because the plaintiff never became liable and the federal government has no right to reimbursement. See Cooperative Leasing, Inc. v. Johnson, 872 So. 2d 956, 960 (Fla. Dist. App. 2004); Dyet v. McKinley, 139 Idaho 526, 529, 81 P.3d 1236, 1239 (2003).

- 9 -

However, several states have held otherwise. South Carolina, Mississippi, Wisconsin, North Carolina, and Hawaii, for example, have held that Medicaid payments are subject to the collateral-source rule. These courts have included gratuitous services in the rule's protection, reasoning that tortfeasors should be liable for the value of medical services, rather than the cost. See Haselden v. Davis, 353 S.C. 481, 483, 579 S.E.2d 293, 294 (2003); Brandon HMA, Inc. v. Bradshaw, 809 So. 2d 611, 619 (Miss. 2001); Ellsworth v. Schelbrock, 235 Wis. 2d 678, 685, 611 N.W.2d 764, 767 (2000); Cates v. Wilson, 321 N.C. 1, 6, 361 S.E.2d 734, 738 (1987); Bynum v. Magno, 106 Haw. 81, 88, 101 P.3d 1149, 1156 (2004).

With our supreme court's decision in Peterson, it appears Illinois has aligned itself with the former set of cases and intends to exclude Medicaid and Medicare payments as "collateral sources" within the meaning of the rule. Akin to the plaintiff in Peterson, those individuals, like plaintiff here, covered by Medicaid or Medicare do not make "expenditures" and have not bargained for their coverage. A covered plaintiff's liability is nonexistent as well because by accepting payments from DHFS, Medicare, or Medicaid, health-care providers have agreed such payments constitute full satisfaction of their fees. See 305 ILCS 5/11-13 (West 2004); 89 Ill. Adm. Code §140.12(i), as amended by 24 Ill. Reg. 18320 (eff. December 1, 2000). We

therefore hold that plaintiff is precluded from recovering the billed amounts and is limited to recovery of those amounts paid by DHFS and Medicare.

We affirm the trial court's order reducing plaintiff's compensatory damages for medical expenses to $19,005.50, reflecting the amount paid by DHFS and Medicare to the health-care providers on plaintiff's behalf.

Affirmed.

TURNER, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse.

I disagree that Peterson prohibits application of the

- 11 -

collateral-source rule when the plaintiff's medical expenses were paid through Medicare or Medicaid. Peterson addressed whether a plaintiff could recover the value of medical services provided gratuitously by a philanthropic third party. In this case, the government paid the plaintiff's medical expenses because the plaintiff presumably could not afford private insurance. Considering the drastic changes in the health-insurance industry since Peterson was decided in 1979, this court should not extend the reasoning of the more than 25-year-old case.

Rising health-insurance costs have forced more people to rely on the government to cover health expenses. The outcome of the majority's decision is Medicare and Medicaid recipients, who lack the funds to acquire insurance, are placed at a disadvantage from those who are financially able to secure insurance. A plaintiff who can afford private insurance is unquestionably allowed a double recovery and may even receive more than what his insurance provider actually paid. See Arthur, 216 Ill. 2d 72, 833 N.E.2d 847. Further, our decision provides a benefit to the wrongdoer who injures an aid recipient because a tortfeasor who happens to injure such a plaintiff does not have to pay for the injuries that he caused.

The majority finds that Arthur should not apply in this case. In Arthur, our supreme court focused on whether the plaintiff could establish the reasonable charge for services

- 12 -

rendered even if that meant recovering more than her insurer actually paid. The court in Arthur noted that part of the justification for the collateral-source rule is that the "'wrong-doer should not *** take advantage of contracts or other relations that may exist between the injured party and third persons.'" Arthur, 216 Ill. 2d at 79, 833 N.E.2d at 852, quoting Wilson, 131 Ill. 2d at 320, 546 N.E.2d at 530. The majority's decision allows the tortfeasor to take advantage of the relation between the aid recipient and the government simply because the injured recipient cannot afford to acquire or bargain for insurance. A tortfeasor would be required to pay an injured plaintiff's medical expenses if that plaintiff is obliged to pay all of his expenses on his own. The tortfeasor should not be excused from paying simply because the government pays the needy plaintiff's medical expenses. When a windfall is inevitable, should the wrongdoer or the innocent and needy plaintiff receive that windfall?

Because Arthur did not specifically overrule Peterson, the majority finds that we must continue to follow Peterson. In Peterson, though, the court addressed a case where an outside source generously agreed to provide medical service without cost. A Medicare or Medicaid recipient is not the lucky receiver of the generosity of some benevolent third party, but rather a needy person who did not have the ability or resources to acquire

private insurance.  When our supreme court in <u>Peterson</u> decided to exclude gratuities from the operation of the collateral-source rule, Illinois became one of only a few jurisdictions to apply such a limit.  See <u>Arthur</u>, 216 Ill. 2d at 91, 833 N.E.2d at 858-59 (McMorrow, C.J., dissenting).  While <u>Arthur</u> did not reassess its decision in <u>Peterson</u>, the court refused to further limit the operation of the collateral-source rule, suggesting the court's movement away from extending the limit any further beyond the exclusion of gratuities.  This court should not now extend <u>Peterson</u> to further limit the collateral-source rule to exclude Medicaid and Medicare recipients.