Docket No. 104538.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SHEILA M. WILLS, Appellant, v. INMAN E. FOSTER, JR., Appellee.

*Opinion filed June 19, 2008.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

In this personal injury case, the jury's damages award included the full amount of plaintiff's billed medical expenses. At issue is whether the trial court erred in reducing the jury's award of medical expenses to the amount actually paid by Medicaid and Medicare in full settlement of the bills. In addressing this issue, we will answer questions about the operation of the collateral source rule that were not resolved in *Arthur v. Catour*, 216 Ill. 2d 72 (2005).

## BACKGROUND

Plaintiff, Sheila M. Wills, filed a second amended complaint against defendant, Inman E. Foster, Jr., seeking to recover for injuries she sustained in an automobile accident. Plaintiff's medical bills

arising out of the accident totaled $80,163.47. However, the amount actually paid by Medicaid and Medicare on plaintiff's behalf, in full settlement of the bills, was $19,005.50. Defendant moved *in limine* to limit plaintiff to introducing into evidence only the paid amounts of the bills. Plaintiff moved *in limine* to prevent defendant from introducing any evidence, or making any argument, that plaintiff's bills had been paid by Medicaid and/or Medicare. The trial court granted plaintiff's motion and denied defendant's motion. Defendant stipulated to the amount of plaintiff's medical bills, and they were entered into evidence. The jury awarded plaintiff the full amount of her medical bills, plus $7,500 for pain and suffering. Defendant filed a posttrial motion, asking the trial court to reduce the amount of the jury's award for medical expenses from $80,163.77 to $19,005.50. The trial court granted defendant's motion and reduced plaintiff's medical expenses award to the amount paid by Medicare and Medicaid. The court stated in its order that, "In the event plaintiff's medical providers seek to recover from plaintiff the difference between the amount paid by the Illinois Department of Public Aid or Medicare, plaintiff may within one year from the date of this order petition the court for a revision of this order." Plaintiff appealed, and the Appellate Court, Fourth District, affirmed. 372 Ill. App. 3d 670.

Plaintiff argued on appeal that the trial court's order violated the collateral source rule and was contrary to this court's decision in *Arthur v. Catour*, 216 Ill. 2d 72 (2005). In *Arthur*, this court held that the plaintiff could submit the entire amount of her billed medical expenses to the jury and was not limited to presenting the amount that her private insurance company actually paid to her health-care providers. The Fourth District distinguished *Arthur* because that case involved a private insurance company rather than Medicaid and Medicare. 372 Ill. App. 3d at 674-75. Focusing on *Arthur*'s explanation that the justification for the collateral source rule is that " 'the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons' " (see *Arthur*, 216 Ill. 2d at 79, quoting *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 320 (1989)), the Fourth District concluded that this reasoning would not apply to a plaintiff who was not required to bargain for her benefits but received them free of charge because of her status. 372

Ill. App. 3d at 672-73. The court found that the more directly applicable case was *Peterson v. Lou Bachrodt Chevrolet Co.*, 76 Ill. 2d 353 (1979), which, the Fourth District noted, had not been explicitly overruled in *Arthur*. In *Peterson*, this court held that the plaintiff could not recover the value of free medical services provided by Shriners' Hospital for Crippled Children because the policies underlying the collateral source rule did not apply when the plaintiff incurred no expense, obligation, or liability in receiving the services for which compensation is later sought. The Fourth District held that this reasoning would apply equally to a plaintiff whose bills were satisfied by Medicare and Medicaid. 372 Ill. App. 3d at 674-75. Justice Cook dissented, arguing that *Peterson* was limited to situations in which a person receives gratuitous medical services. According to Justice Cook, the majority decision conferred a benefit on tortfeasors who injure a poor or elderly person and questioned an outcome that would hold torfeastors fully responsible for a plaintiff's medical expenses only in situations in which the plaintiff can afford private insurance. Justice Cook believed that this court in *Arthur* was moving away from any further limits on the collateral source rule, and that the majority had improperly extended *Peterson*'s rationale to Medicare and Medicaid recipients. 372 Ill. App. 3d at 676-77 (Cook, J., dissenting). We allowed plaintiff's petition for leave to appeal. 210 Ill. 2d R. 315(a).

Shortly after we allowed leave to appeal, the Appellate Court, Third District, filed an opinion rejecting the Fourth District's analysis in this case. See *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095 (2007). In *Nickon*, the plaintiff introduced into evidence medical bills totaling $119,723.11, and the trial court prohibited the defendant from producing evidence that Medicare paid a reduced amount of $34,888.61 as payment in full for the bills. The jury returned a verdict for the plaintiff, and its award included $119,000 in medical expenses. The trial court denied the defendant's posttrial request for a set-off or a reduction of the award to the amount paid by Medicare. On appeal, the defendant argued both that the jury should have been allowed to consider that the health-care provider accepted $34,888.61 from Medicare as payment in full for the bill and that the trial court should have reduced the jury's award to the amount paid by Medicare. The Third District rejected both arguments.

-3-

On the evidentiary question, the Third District held that allowing the plaintiff to submit the amount initially billed by her providers was consistent with *Arthur*.[1] *Nickon*, 376 Ill. App. 3d at 1098-1100. On the damages question, the Third District held that the defendant was not entitled to a set-off or a reduction of the award to the amount paid by Medicare. The court distinguished *Peterson* on the basis that no bill was generated in that case. According to the Third District, *Peterson* applies only to services given free of charge. The Third District did not believe that the collateral source rule should be affected by the relationship between the injured party and the agency paying the medical bills. *Nickon*, 376 Ill. App. 3d at 1101-02. The Third District acknowledged that its holding conflicted with the Fourth District's analysis in this case and stated that it believed that this court would soon provide further guidance on the issue. *Nickon*, 376 Ill. App. 3d at 1101 n.1.

ANALYSIS

1. Standard of Review

The issues in this case involve how the collateral source rule applies in cases in which the plaintiff's medical bills are paid by Medicaid and/or Medicare at a discounted rate. The facts are undisputed, and the parties ask us to determine the correctness of the trial court's application of the law to the undisputed facts. Accordingly, our review proceeds *de novo*. *Arthur*, 116 Ill. 2d at 78.

2. The Collateral Source Rule

" 'Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor.' " *Arthur*, 216 Ill. 2d at 78, quoting *Wilson*, 131 Ill. 2d

---

[1] The Third District oversimplified this court's holding in *Arthur* as "simply give the jury the initial bill and move on with the evidence." *Nickon*, 376 Ill. App. 3d at 1100. *Arthur* actually held that, if the full amount of the bill has not been paid, the plaintiff must make a *prima facie* case that the billed amount was reasonable before the bill may be admitted into evidence. *Arthur*, 216 Ill. 2d at 82.

at 320. As set forth in section 920A(2) of the Restatement (Second) of Torts (Restatement (Second) of Torts §920A(2), at 513 (1979)), the rule provides that, "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." The rule has been described as an "established exception to the general rule that damages in negligence actions must be compensatory." 25 C.J.S. *Damages* §172 (2002). Although the rule appears to allow a double recovery, the appellate court correctly noted that, typically, the collateral source will have a lien or subrogation right that prevents such a double recovery. 372 Ill. App. 3d at 673.

In Illinois, this court has held that the rule has both evidentiary and substantive components. As a rule of evidence, the rule prevents the jury from learning anything about collateral income. *Arthur*, 216 Ill. 2d at 79. For instance, the rule prevents defendants from introducing any evidence that all or part of a plaintiff's losses have been covered by insurance. *Arthur*, 216 Ill. 2d at 79-80. As a substantive rule of damages, the rule " 'bars a defendant from reducing the plaintiff's compensatory award by the amount the plaintiff received from the collateral source.' " *Arthur*, 216 Ill. 2d at 80, quoting J. Fischer, Understanding Remedies §12(a), at 77 (1999). Comment *d* to section 920A of the Restatement notes that the rule is of common law origin and may be altered by statute. Restatement (Second) of Torts §920A, Comment *d*, at 515 (1979). The legislature has modified the collateral source rule in sections 2–1205 and 2–1205.1 of the Code of Civil Procedure (735 ILCS 5/2–1205, 2–1205.1 (West 2006)), but those sections are not at issue in this case.

## A. *Peterson*

In *Peterson*, this court placed limits on the operation of the collateral source rule. The plaintiff in that case sought to recover the reasonable value of free medical services provided to his son by Shriners' Hospital for Crippled Children. This court held that he could not do so, explaining that "the policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he

-5-

seeks compensation." *Peterson*, 76 Ill. 2d at 362. This court noted that one of the policy justifications often cited for the collateral source rule is that the tortfeasor should not benefit from expenditures made by the injured party in procuring insurance (*Peterson*, 76 Ill. 2d at 362-63, quoting 22 Am. Jur. 2d *Damages* §210, at 293-94 (1965)), and that this policy would not apply to the person who receives gratuitous medical benefits:

> "In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule. We refuse to join those courts which, without consideration of the facts of each case, blindly adhere to 'the collateral source rule, permitting the plaintiff to exceed compensatory limits in the interest of insuring an impact upon the defendant.' (Note, *Unreason in the Law of Damages: The Collateral Source Rule*, 77 Harv. L. Rev. 741, 742 (1964) (hereafter *Unreason*).) The purpose of compensatory tort damages is to compensate (Restatement (Second) of Torts sec. 903, comment *a* (1979)); it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs. The view that a windfall, if any is to be enjoyed, should go to the plaintiff (*Grayson v. Williams* (10th Cir. 1958), 256 F.2d 61, 65) borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases." *Peterson*, 76 Ill. 2d at 363.

This holding placed Illinois in the minority of courts on this issue. See *Arthur*, 216 Ill. 2d at 92 (McMorrow, C.J., dissenting) (listing several authorities noting that Illinois is one of only a few jurisdictions to omit gratuities from the collateral source rule).[2]

_____

[2]For an example of a court applying the majority rule, see *Degen v. Bayman*, 90 S.D. 400, 241 N.W.2d 703 (1976). In that case, the plaintiff recovered $13,490 in medical expenses that were provided to his son free of charge by Shriners' Hospital for Crippled Children. The defendant argued that the trial court erred in allowing the plaintiff to recover for medical services that were provided free of charge. The South Dakota Supreme Court disagreed, and held that the plaintiff is allowed to recover for the reasonable value of medical services caused by the injury and that the plaintiff is not limited to recovering expenditures actually made or

Moreover, this holding was contrary to section 920A of the Restatement. Comment *c* to section 920A lists the types of benefits that are not subtracted from a plaintiff's recovery under the collateral source rule. Specifically, comment *c*(3) provides as follows:

> "Gratuities. This applies to cash gratuities and to the rendering of services. Thus the fact that the doctor did not charge for his services or the plaintiff was treated in a veterans hospital does not prevent his recovery for the reasonable value of the services." Restatement (Second) of Torts §920A, Comment *c*(3), at 515 (1979).

## B. *Arthur*

Twenty-six years after *Peterson*, this court revisited the collateral source rule in *Arthur*. As set forth above, this court held in *Arthur* that the plaintiff was entitled to submit the full amount of her charged medical bills to the jury and was not limited to presenting the reduced rate actually paid by her private insurer. *Arthur* arose on a certified question and involved only the evidentiary aspect of the collateral source rule. This court's discussion of the collateral source rule differed from that set forth in *Peterson*. In *Peterson*, this court did not mention section 920A of the Restatement, instead focusing on section 903. Moreover, *Peterson* explicitly rejected the rationale often cited in support of the collateral source rule that any windfall should be enjoyed by the plaintiff rather than by the defendant. *Arthur*, by contrast, did not mention section 903 of the Restatement and instead quoted approvingly from section 920A, comment *b*:

> "The collateral source rule protects collateral payments made to or benefits conferred on the plaintiff by denying the defendant any corresponding offset or credit. Such collateral benefits do not reduce the defendant's tort liability, even though they reduce the plaintiff's loss.

---

obligations incurred. The court further explained that the tortfeasor is not allowed to benefit because the injured party was able to secure gratuitous medical services from a third party. *Degen*, 90 S.D. at 410-11, 241 N.W.2d at 708-09.

'They do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor.' Restatement (Second) of Torts §920A, Comment b, at 514 (1979).

Accord *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 215 (1999); 2 D. Dobbs, Remedies §8.6(3), at 493 (2d ed. 1993). The rule operates to prevent the jury from learning anything about collateral income." *Arthur*, 216 Ill. 2d at 78-79.

Thus, not only did *Arthur* rely on section 920A, it endorsed the view rejected by *Peterson* that a benefit intended for the plaintiff should not become a windfall for the defendant.

*Arthur* further explained that the plaintiff was entitled to recover the *reasonable value* of her medical expenses, and that the collateral source rule prohibited the defense from introducing any evidence that the plaintiff's loss had been covered in part by insurance. *Arthur*, 216 Ill. 2d at 80-81. Nor could the defense limit the plaintiff's ability to introduce evidence of the reasonable cost of health care necessitated by the defendant's conduct. Moreover, *Arthur* determined that the plaintiff became liable for the bills at the time that she received the medical services, not when a bill was issued to her insurance company. *Arthur*, 216 Ill. 2d at 80-81.

Finally, *Arthur* noted the rule that, for a medical bill to be admissible into evidence, it must be established that the charges were reasonable. In Illinois, a paid bill constitutes *prima facie* evidence of reasonableness. In a case in which the plaintiff seeks to admit a bill that has not been paid in whole or in part, he or she must establish reasonableness by other means–such as by introducing the testimony of someone having knowledge of the services rendered and the reasonable and customary charge for such services. Thus, this court concluded that the plaintiff in *Arthur* was entitled to submit the amounts initially billed, but could not establish a *prima facie* case of

reasonableness based on the bills alone because the entire billed amount had not been paid. *Arthur*, 216 Ill. 2d at 81-83.

### 3. Did *Peterson* Survive *Arthur*?

This court has been criticized both internally (see *Arthur*, 216 Ill. 2d at 84-100 (McMorrow, C.J., dissenting)) and externally (see, *e.g.*, R. Hernquist, Note, *Arthur v. Catour: An Examination of the Collateral Source Rule in Illinois*, 38 Loy. U. Chi. L.J. 169, 208-09 (2006)) for failing to reconcile the *Arthur* opinion with *Peterson*. The trial court in *Arthur* based its decision on *Peterson*, but this court did not discuss *Peterson* when it reversed the trial court. In her dissent, Chief Justice McMorrow criticized the majority for discussing the collateral source rule in general terms, instead of acknowledging the limited form of the collateral source rule adopted in *Peterson*. *Arthur*, 216 Ill. 2d at 91-92 (McMorrow, C.J., dissenting). To determine the status of *Peterson* in light of *Arthur*, we consider the three approaches courts have taken in determining whether, pursuant to the collateral source rule, a plaintiff was entitled to recover his or her full billed medical expenses when the bill was later settled by a third party for a lesser amount. In *Bozeman v. State*, 879 So. 2d 692, 701 (La. 2004), the Supreme Court of Louisiana identified these three approaches as: (1) actual amount paid; (2) benefit of the bargain; and (3) reasonable value.

### A. *Actual Amount Paid*

Examples of cases following the actual-amount-paid approach are *Dyet v. McKinley*, 139 Idaho 526, 81 P.3d 1236 (2003), and *Terrell v. Nanda*, 759 So. 2d 1026 (La. App. 2000). Courts in these cases held that the plaintiff was limited to recovering the amount actually paid in full settlement of the bill and could not recover the amount written off. These courts focused on the objective of compensatory damages as making an injured party whole. According to these courts, the written-off amounts are not damages incurred by the plaintiff. For instance, the court in *Terrell* explained that "a plaintiff may not recover as damages that portion of medical expenses 'contractually adjusted' or 'written-off' by a healthcare provider pursuant to the requirements of the Medicaid program. Such expenses are not

-9-

damages incurred by the injured plaintiff and are not subject to recovery by application of the 'collateral source' rule." *Terrell*, 759 So. 2d at 1031.

This approach has been criticized for focusing its inquiry on the nature of the write-offs *vis-a-vis* the tort victim rather than *vis-a-vis* the tortfeasor. See *Bozeman*, 879 So. 2d at 703. *Bozeman* reasoned that the "argument that there is no underlying obligation for plaintiff to pay the amount of the write-offs and, therefore, the plaintiff should not be allowed to benefit from a non-existent debt, falls because the effect of this reasoning results in a diminution of the tortfeasor's liability *vis-a-vis* an insured victim when compared with the same tortfeasor's liability *vis-a-vis* an uninsured victim." *Bozeman*, 879 So. 2d at 703; see also *Acuar v. Letourneau*, 260 Va. 180, 192, 531 S.E.2d 316, 322 (2000) (explaining that the "focal point of the collateral source rule is not whether an injured party has 'incurred' certain medical expenses. Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor").

## B. *Benefit of the Bargain*

The second approach courts take is the benefit-of-the-bargain approach. Courts taking this approach allow plaintiffs to recover the full value of their medical expenses where the plaintiff has paid some consideration for the benefit of the write-off. They employ reasoning such as the following:

> "[W]e conclude that Acuar cannot deduct from that full compensation any part of the benefits Letourneau received from his contractual arrangement with his health insurance carrier, whether those benefits took the form of medical expense payments or amounts written off because of agreements between his health insurance carrier and his health care providers. Those amounts written off are as much of a benefit for which Letourneau paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers. The portions of medical expenses that health care providers write off constitute 'compensation or indemnity received by a tort victim from a source collateral

-10-

to the tortfeasor ... .' " *Acuar*, 260 Va. at 192, 531 S.E.2d at 322-23, quoting *Schickling v. Aspinall*, 235 Va. 472, 474, 369 S.E.2d 172, 174 (1988).

Under this approach, courts allow plaintiffs who have private insurance to recover the full amount of their medical expenses because they have bargained for the benefits they received. These courts also hold that plaintiffs whose bills are paid by Medicaid may not recover the reasonable value of their medical expenses and are limited to the amount paid by Medicaid. The courts distinguish between Medicare and Medicaid recipients, holding that, unlike Medicaid recipients, Medicare recipients should be treated the same as those with private insurance because Medicare recipients pay for their coverage through compulsory payroll taxes. See, *e.g.*, *Bozeman*, 879 So. 2d at 703-05; *Rose v. Via Christi Health System, Inc.*, 276 Kan. 539, 546, 78 P.3d 798, 803 (2003).

This benefit-of-the-bargain approach has been criticized for discriminating amongst classes of plaintiffs. See G. Zorogastua, Comment, *Improperly Divorced From Its Roots: The Rationales of the Collateral Source Rule and Their Implications for Medicare and Medicaid Write-Offs*, 55 U. Kan. L. Rev. 463, 491-93 (2007) (arguing that the benefit-of-the-bargain approach irrationally discriminates among classes of plaintiffs and guarantees that the poor and disabled will recover less in economic damages than those with Medicare or private insurance); see also *Cates v. Wilson*, 321 N.C. 1, 6, 361 S.E.2d 734, 737-38 (1987) ("Medicaid is a form of insurance paid for by taxes collected from society in general. 'The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source' "), quoting *Bennett v. Haley*, 132 Ga. App. 512, 524, 208 S.E.2d 302, 311 (1974).

Another obvious criticism of this approach is that, like the actual-amount-paid approach, it undermines the collateral source rule by using the plaintiff's relationship with a third party to measure the tortfeasor's liability. For instance, *Bozeman* declined to follow the actual-amount-paid approach because it improperly placed the focus on the write-offs *vis-a-vis* the tort victim rather than *vis-a-vis* the tortfeasor. But then *Bozeman* did the very same thing by adopting a benefit-of-the-bargain approach that measured the amount of the

tortfeasor's liability by considering whether the tort victim was insured by private insurance and Medicare on the one hand or Medicaid on the other. See *Bozeman*, 879 So. 2d at 703-05.

C. *Reasonable Value*

Most courts follow the reasonable-value approach. Courts applying this approach hold that the plaintiff is entitled to recover the reasonable value of medical services and do not distinguish between whether a plaintiff has private insurance or is covered by a government program. A minority of courts employing this approach hold that the reasonable value of medical services is the actual amount paid. See, *e.g.*, *Cooperative Leasing, Inc. v. Johnson*, 872 So. 2d 956, 958-60 (Fla. App. 2004); *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 161-65, 765 A.2d 786, 789-91 (2001); *Hanif v. Housing Authority*, 200 Cal. App. 3d 635, 639-43, 246 Cal. Rptr. 192, 194-96 (1988). Courts in these cases held that the plaintiffs were limited to recovering the amounts actually paid in full settlement of the bills and could not recover the amounts written off. These courts focus on the objective of compensatory damages as making an injured party whole. In denying the plaintiff the right to recover the amount written off, *Johnson* relied heavily on this court's decision in *Peterson*. *Johnson* noted that *Peterson* held that an individual could not recover for " 'the value of services that he has obtained without expense, obligation, or liability.' " *Johnson*, 872 So. 2d at 958, quoting *Peterson*, 76 Ill. 2d at 362. *Johnson* determined that a *Peterson* approach would not allow recovery of write-offs because it stood for the proposition that the reasonable value of medical services is limited to the amount accepted as payment in full for medical services. *Johnson*, 872 So. 2d at 958. Another hallmark of decisions employing the minority view is that, rather than rely on section 920A of the Restatement and the comments thereto, they focus on section 911, comment *h*, which states as follows:

> "When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except

-12-

when the low rate was intended as a gift to him." Restatement (Second) of Torts §911, Comment *h*, at 476-77 (1979).

See *Johnson*, 872 So. 2d at 958; *Moorhead*, 564 Pa. at 162-63, 765 A.2d at 789; *Hanif*, 200 Cal. App. 3d at 643, 246 Cal. Rptr. at 196-97.

These cases have been criticized for relying on section 911, comment *h*, of the Restatement. In *Bynum v. Magno*, 106 Haw. 81, 101 P.3d 1149 (2004), the Supreme Court of Hawaii explained that the term "value" as used in section 911 of the Restatement means "the exchange value" and that,

" 'the exchange value of property or services is the amount of money for which the subject matter could be exchanged or procured if there is a market continually resorted [to] by traders, or if no market exists, the amount that could be obtained in the usual course of finding a purchaser or hirer of similar property or services.' " *Bynum*, 106 Haw. at 91, 101 P.3d at 1159, quoting Restatement (Second) of Torts §911(2), at 472 (1979).

*Bynum* then explained that comment *h* to section 911,

"only pertains to the 'value of services rendered' in the context of ascertaining the 'measure of recovery of a person *who sues for the value of his services tortiously obtained*' or when a plaintiff 'seeks to recover for expenditures *made or liability incurred to third persons for services rendered*.' This definition of 'value of services rendered' is inapplicable, for the present case does not involve a provider who is suing for the value of the medical services provided or who seeks to recover expenditures incurred to third persons." (Emphases in original.) *Bynum*, 106 Haw. at 91, 101 P.3d at 1159, quoting Restatement (Second) of Torts §911(2), Comment *h*, at 476 (1979).

See also *Moorhead*, 564 Pa. at 172, 765 A.2d at 795 (Nigro, J., dissenting) (arguing that section 911, comment *h*, was not applicable).

Moreover, critics of the minority approach have also pointed out that section 924 of the Restatement covers "Harm to the Person" and provides that an injured person is entitled to recover "reasonable medical and other expenses." Restatement (Second) of Torts §924(c), at 523 (1979). Comment *f* to section 924 cites section 920A and

explains that "[t]he value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as when a physician donates his services." Restatement (Second) of Torts §924, Comment *f*, at 527 (1979). Critics have thus questioned how courts can rely on section 911, comment *h*, when section 924, comment *f*, is directly applicable. See *Bynum*, 106 Haw. at 91-92, 101 P.3d at 1159-60; *Moorhead*, 564 Pa. at 172, 765 A.2d at 795 (Nigro, J., dissenting).

The vast majority of courts to employ a reasonable-value approach hold that the plaintiff may seek to recover the amount originally billed by the medical provider. See, *e.g.*, *McMullin v. United States*, 515 F. Supp. 2d 904 (E.D. Ark. 2007) (applying Arkansas law); *Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255 (D.N.M. 2006) (applying New Mexico law); *Papke v. Harbert*, 738 N.W.2d 510 (S.D. 2007); *Robinson v. Bates*, 112 Ohio St. 3d 17, 2006–Ohio–6362; *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d 676 (Ky. 2005); *Bynum*, 106 Haw. 81, 101 P.3d 1149; *Haselden v. Davis*, 353 S.C. 481, 579 S.E.2d 293 (2003); *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611 (Miss. 2001); *Koffman v. Leichtfuss*, 246 Wis. 2d 31, 630 N.W.2d 201 (2001); *Olariu v. Marrero*, 248 Ga. App. 824, 549 S.E.2d 121 (2001); *Texarkana Memorial Hospital, Inc. v. Murdock*, 903 S.W.2d 868 (Tex. App. 1995); *rev'd on other grounds*, 946 S.W.2d 836 (Tex. 1997); *Brown v. Van Noy*, 879 S.W.2d 667 (Mo. App. 1994). This view is in line with sections 924 and 920A of the Restatement, and courts often rely on these sections. As explained above, section 924 allows an injured plaintiff to recover reasonable medical expenses (Restatement (Second) of Torts §924, at 523 (1979)), and comment *f* explains that this is a recovery for *value* even if there is no liability or expense to the injured person (Restatement (Second) of Torts §924, Comment *f*, at 527 (1979)). Section 920A(2) provides that benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability. Restatement (Second) of Torts §920A(2), at 513 (1979). Comment *b* explains that,

> "[t]he law does not differentiate between the *nature* of the benefits, so long as they did not come from the defendant or a person acting for him. One way of stating this conclusion is to say that it is the tortfeasor's responsibility to compensate

for all harm that he causes, not confined to the net loss that the injured party receives." (Emphasis added.) Restatement (Second) of Torts §920A(2), Comment *b*, at 514 (1979).

Comment *c* lists various types of collateral benefits that are covered by the rule: insurance policies, employment benefits, gratuities, and social legislation benefits. Restatement (Second) of Torts §920A(2), Comment *c*, at 514-15 (1979).

A common criticism of this approach is that it can lead to a windfall for the plaintiff. In *Hanif*, the court argued that the primary purpose of awarding damages is to compensate the plaintiff. In other words, the plaintiff should be made whole, but he or she should not be placed in a better position than he would have been in if the wrong had not been done. *Hanif*, 200 Cal. App. 3d at 640-41, 246 Cal. Rptr. at 195. The *Hanif* court argued that reasonable value is "a term of limitation, not of aggrandizement" and that "when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate." *Hanif*, 200 Cal. App. 3d at 641, 246 Cal. Rptr. at 195.

### D. *The Rule in Illinois: Benefit of the Bargain or Reasonable Value?*

*Arthur* contains language that could be used to suggest that this court has adopted either a reasonable-value approach or a benefit-of-the-bargain approach. Defendant argues that *Arthur* followed a benefit-of-the-bargain theory and that the rule allowing privately insured plaintiffs to seek recovery of write-offs would not apply to a plaintiff covered by Medicaid or Medicare.[3] *Arthur* stated at one point that the justification for the collateral-source rule is that " 'the wrongdoer should not benefit from the expenditures made by the

---

[3]Defendant contends that neither a plaintiff covered by Medicare nor one covered by Medicaid should be allowed to seek recovery of write-offs. As we noted above, however, courts adopting the benefit-of-the-bargain approach typically distinguish between the two programs and treat Medicare the same as private insurance.

injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.' " *Arthur*, 216 Ill. 2d at 79, quoting *Wilson*, 131 Ill. 2d at 320. We also noted that "plaintiff received the benefit of her bargain with her insurance company–full coverage for incurred medical expenses." *Arthur*, 216 Ill. 2d at 81. Plaintiff denies that *Arthur* endorsed a benefit-of-the-bargain approach and argues that the benefit-of-the-bargain language was merely one of several policy justifications this court gave in support of the collateral source rule. According to plaintiff, the point of *Arthur* is that a plaintiff is entitled to recover the reasonable value of medical expenses. Support can be found for plaintiff's position in *Arthur*. This court looked to liability not at the time the bills were issued, but at the time the services were rendered. *Arthur*, 216 Ill. 2d at 80. This court also said that plaintiff was entitled to recover the reasonable expense of necessary medical care resulting from defendant's negligence, and that "[t]he only relevant question in the litigation between plaintiff and defendants is the reasonable value of the services rendered." *Arthur*, 216 Ill. 2d at 81. Moreover, *Arthur* relied on comment *b* to section 920A(2) of the Restatement (*Arthur*, 216 Ill. 2d at 78-79), and that comment supports a reasonable value approach.

To the extent that *Arthur* suggested both approaches, we make clear today that we follow the reasonable-value approach, not the benefit-of-the-bargain approach. We do so for several reasons. First, we note that, when discussing the policy justifications for the collateral source rule, this court has stated that " 'the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts *or other relations* that may exist between the injured party and third persons.' " (Emphasis added.) *Arthur*, 216 Ill. 2d at 79, quoting *Wilson*, 131 Ill. 2d at 320. Clearly, another relationship between an injured plaintiff and a third party could be a relationship with the government that allows the plaintiff's medical expenses to be paid because of factors such as her age or income level. Similarly, an arrangement between the plaintiff and a physician who agrees to perform free medical services is a relationship with a third party who is collateral to the tortfeasor. In either case, the benefit is intended to be for the plaintiff, not for the tortfeasor. A " 'benefit that is directed to the injured party should not be shifted so

as to become a windfall for the tortfeasor.' " *Arthur*, 216 Ill. 2d at 79, quoting Restatement (Second) of Torts §920A, Comment *b*, at 514 (1979).

Second, *Arthur* relied on section 920A of the Restatement, and that section supports a reasonable-value approach. As set forth above, the Restatement allows all injured plaintiffs to recover the reasonable value of medical expenses and does not distinguish between those who have private insurance, those whose expenses are paid by the government, or those who receive their treatment on a gratuitous basis. See Restatement (Second) of Torts §920A, Comments *b*, *c*, at 514-15 (1979).

Third, as discussed more fully above, the deficiencies of the benefit-of-the-bargain approach are obvious. Courts employing this approach discriminate amongst plaintiffs, holding that only the sick or disabled plaintiff whose expenses are covered by Medicaid may not seek to recover the full billed amount of medical expenses. Moreover, courts reach this outcome by employing an analysis that undermines the spirit of the collateral source rule: the measure of the defendant's liability is determined by the nature of the injured party's relationship with a source collateral to the tortfeasor. As noted by the Supreme Court of Wisconsin, "[t]he collateral source rule ensures that the liability of similarly situated defendants is not dependent on the relative fortuity of the manner in which each plaintiff's medical expenses are financed." *Leitinger v. DBart, Inc.*, 2007 WI 84, ¶32, 302 Wis. 2d 110, ¶32, 736 N.W.2d 1, ¶32; see also *Brandon HMA*, 809 So. 2d at 619 (explaining that the defendant "does not get a break on damages just because it caused permanent injuries to a poor person"); *Ellsworth v. Schelbrock*, 2000 WI 63, ¶17, 235 Wis. 2d 678, ¶17, 611 N.W.2d 764, ¶17 (explaining that the defendant "is not entitled to reap the benefit of [the plaintiff's] eligibility for public assistance or from the government's clout in the health care market place").

Fourth, the vast majority of courts to consider the issue employ some sort of reasonable-value approach. As we explained above, a minority of the "reasonable value" courts hold that the reasonable value is equivalent to the amount actually paid, while a majority of courts allow the plaintiff to seek to recover the full billed amount. In *Illinois*, this question was settled by *Arthur*. *Arthur* stands for the

proposition that the plaintiff may place the entire billed amount into evidence, provided that the plaintiff establishes the proper foundational requirements to show the bill's reasonableness. *Arthur*, 216 Ill. 2d at 81-83.

## E. *Peterson is Overruled*

*Peterson* is incompatible with the reasonable-value approach adopted by this court. *Peterson* focused solely on the compensatory nature of tort damages, relied on section 903 of the Restatement, and explicitly rejected the reasoning that any windfall should be awarded to the plaintiff rather than defendant. *Arthur* focused on section 920A of the Restatement, specifically cited the language from comment *b* that, even if the plaintiff receives double compensation, "it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor" (Restatement (Second) of Torts §920A, Comment *b*, at 514 (1979)), did not discuss the compensatory nature of tort damages, and stated that the relevant question is the "reasonable value of the services rendered." *Arthur*, 216 Ill. 2d at 81. Had this court followed a strict *Peterson* approach in *Arthur*, it is likely that this court would have concluded, as did the Florida appellate court in *Johnson* (applying *Peterson*) that the written-off amount could not be recovered. See *Johnson*, 872 So. 2d at 958; see also *Baptist*, 177 S.W.2d at 689 (Cooper, J., dissenting) (citing *Peterson* in support of argument that the majority erred in adopting a reasonable-value approach). By contrast, *Arthur* held that the plaintiff was entitled to introduce evidence of the full billed amount, provided that the plaintiff could establish that this amount represented the reasonable value of the services rendered. See *Arthur*, 216 Ill. 2d at 80-83. *Arthur* represented a move toward adopting a reasonable-value approach based on section 920A of the Restatement, and this approach is incompatible with *Peterson*. Accordingly, *Peterson* is overruled.

## 4. Are the Paid Bills Admissible by the Defense?

A further disagreement exists in the courts over whether the defense may introduce evidence of the paid amount to assist the jury in determining reasonable value. In *Arthur*, this court held that

-18-

defendants are free to challenge a plaintiff's proof of reasonableness on cross-examination and to introduce their own evidence of reasonableness. In her dissent, Chief Justice McMorrow criticized the court for failing to explain what type of evidence defendants could introduce and whether it included the amount paid by a third party. *Arthur*, 216 Ill. 2d at 97-98 (McMorrow, C.J., dissenting); see also 38 Loy. U. Chi. L.J. at 210 ("[b]ecause the majority did not specifically address how a defendant may properly contest the reasonableness, this may be an area ripe for abuse and conflicting opinions").

Some courts have held that both the amount originally billed and the amount actually paid may be considered by the jury. For instance, in *Robinson*, the Supreme Court of Ohio held that plaintiffs may recover the reasonable value of services and,

> "the reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bill rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care." *Robinson*, 2006–Ohio–6362, at ¶17.

Other courts have held that defendants may not introduce the amount paid by a third party to assist the jury in determining reasonable value. For instance, in *Leitinger*, the Supreme Court of Wisconsin found that allowing defendants to introduce this evidence would undermine the collateral source rule: "If evidence of the collateral source payments were admissible, even for consideration of the reasonable value of the medical treatment rendered, a plaintiff's recovery of medical expenses would be affected by the amount actually paid by a collateral source for medical services." *Leitinger*, 2007 WI 84, ¶48. The court further considered the defendant's argument that it should be allowed to introduce the amount of the paid bill if it did not divulge the source of the payments. The court disagreed:

> "Although claiming that the evidence assists the fact-finder in determining the reasonable value of the medical treatment and does not limit or reduce the damages, [the defendant], in essence, is seeking to do indirectly what it cannot do directly, that is, it is seeking to limit [the plaintiff's] award for expenses for medical treatment by introducing

evidence that payment was made by a collateral source." *Leitinger*, 2007 WI 84, ¶53.

Moreover, the court shared the concern expressed by the South Carolina Supreme Court in *Covington v. George*, 359 S.C. 100, 104, 597 S.E.2d 142, 144 (2004), that this unexplained evidence would confuse the jury, and any attempt by plaintiff to explain the compromised payment would lead to the existence of a collateral source. *Leitinger*, 2007 WI 84, ¶52. See also *Papke*, 738 N.W.2d at 536 ("when establishing the reasonable value of medical services, defendants in South Dakota are currently prohibited from introducing evidence that a plaintiff's award should be reduced because of a benefit received wholly independent of the defendants"); *Radvany v. Davis*, 262 Va. 308, 310, 551 S.E.2d 347, 348 (2001) (amounts paid by insurance carrier not admissible on question of reasonable value of medical services); *Bynum*, 106 Haw. at 94, 101 P.3d at 1162; *Goble v. Frohman*, 848 So. 2d 406, 410 (Fla. App. 2003) ("To challenge the reasonableness or necessity of the medical bills, [the defendant] could have introduced evidence on the value of or need for the medical treatment. As stated in *Gormley* [*v. GTE Products Corp.*, 587 So. 2d 455, 457 (Fla. 1991)] 'there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim's receipt of insurance-type benefits' "). Chief Justice McMorrow expressed a similar concern in her dissent in *Arthur*, arguing that allowing the defense to bring out that the full billed amount had not been paid would compromise the protections of the collateral source rule and that "[a]llowing evidence of both the billed and discounted amounts compromises the collateral source rule, confuses the jury, and potentially prejudices both parties in the case." *Arthur*, 216 Ill. 2d at 98 (McMorrow, C.J., dissenting).

We agree with the latter cases. In *Arthur*, this court made clear that the collateral source rule "operates to prevent the jury from learning *anything* about collateral income" (emphasis added) and that the evidentiary component prevents "defendants from introducing evidence that a plaintiff's losses have been compensated for, even in part, by insurance." *Arthur*, 216 Ill. 2d at 79, 80. Thus, defendants are free to cross-examine any witnesses that a plaintiff might call to establish reasonableness, and the defense is also free to call its own witnesses to testify that the billed amounts do not reflect the reasonable value of the services. Defendants may not, however,

introduce evidence that the plaintiff's bills were settled for a lesser amount because to do so would undermine the collateral source rule.

### 5. Did the Trial Court Err in Reducing Plaintiff's Award to the Amount Paid by Medicaid and Medicare?

Having hopefully answered any outstanding questions on the operation of the collateral source rule in cases in which a plaintiff's medical bills were settled for less than the billed amount, we now consider the application of the law to this case. As we noted above, the trial court denied defendant's motion *in limine*, which sought to limit plaintiff's evidence of medical expenses to the amount paid by Medicaid and Medicare at a reduced rate. This was correct under the law set forth above and in *Arthur*. The difference between this case and *Arthur*, however, is that this case involved a recipient of Medicaid and Medicare, and the amount of plaintiff's award was reduced after a trial. Under the reasonable-value approach that we have adopted, the fact that the collateral source was the government instead of a private insurance company is a distinction without a difference. All plaintiffs are entitled to seek to recover the full reasonable value of their medical expenses.

Although *Arthur* involved only the evidentiary component of the collateral source rule, the language that the court used in that case was broad enough to encompass the damages component. For instance, this court stated that the collateral source rule "protects collateral payments made to or benefits conferred on the plaintiff by *denying the defendant any corresponding offset or credit*. Such collateral benefits do not reduce the defendant's tort liability, even though they reduce the plaintiff's loss." (Emphasis added.) *Arthur*, 216 Ill. 2d at 78. Moreover, this court stated that "[p]laintiff, of course, is entitled to *recover as compensatory damages* the reasonable expense of necessary medical care" and that the only relevant question was the reasonable value of those services. (Emphasis added.) *Arthur*, 216 Ill. 2d at 81. This court further explained that, because the full amount of the bills had not been paid, the plaintiff would have to satisfy the requirements for admission of the bills into evidence through witness testimony. *Arthur*, 216 Ill. 2d at 82. Once the bills were admitted into evidence, it was up to the jury to consider whether to award " 'none, part, or all of the bill as damages.' " *Arthur*, 216 Ill. 2d at 83, quoting *Baker v. Hutson*, 333 Ill. App. 3d 486, 494 (2002).

Here, we find that the trial court erred in reducing plaintiff's award of medical expenses to the amount paid by Medicaid and Medicare. Plaintiff did not produce a witness to testify that the billed amount was reasonable. However, that was not necessary here because defendant stipulated to the admission of the billed amounts and neither objected to nor offered any evidence on the question of their reasonableness. The position defendant took in this case was not that the amounts billed were not reasonable, but that the written-off amount was not recoverable as damages as a matter of law. The reasonableness requirement discussed in *Arthur* is part of the foundational requirement that a plaintiff must satisfy for admission of an unpaid bill into evidence. *Arthur*, 216 Ill. 2d at 82; see also *Arthur*, 216 Ill. 2d at 96 (McMorrow, C.J., dissenting), quoting 11 Ill. Jur. *Personal Injury & Torts* §5:26, at 315 (2002) ("[i]f no evidence as to a bill's reasonableness is introduced, the bill is not admissible into evidence"). Defense counsel explained at oral argument that the issue was set up in pretrial motions, and once the court had ruled, the defense elected not to take up the jury's time with a foundation objection. By stipulating to the admission of the billed amounts into evidence and failing to offer any objection, defendant relieved plaintiff of the burden of establishing reasonableness. Further, as *Arthur* clearly states, once the bill has been admitted it is for the jury to decide whether to award all, part, or none of the bill. See *Arthur*, 216 Ill. 2d at 83. Here, the jury awarded the entire amount. There was no basis for the trial court to reduce plaintiff's award.

## CONCLUSION

Plaintiff was entitled to seek to recover the reasonable value of her medical expenses and her recovery was not limited to the amount actually paid by Medicare and Medicaid. We thus reverse the appellate court's judgment upholding the trial court's reduction of plaintiff's medical expenses award to the amount paid by Medicare and Medicaid, as well as that portion of the circuit court's judgment. We remand the cause to the circuit court for further proceedings.

*Appellate court judgment reversed;*
*circuit court judgment reversed in part;*
*cause remanded.*

-22-