No. 3–06–0952

Filed October 24, 2007.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| NICK NICKON, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Bureau County, Illinois, |
| | ) | |
| v. | ) | No. 03–L–53 |
| | ) | |
| CITY OF PRINCETON, | ) | Honorable |
| | ) | Marc P. Bernabei |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the opinion of the court :

Plaintiff Nick Nickon filed a negligence action against defendant City of Princeton for injuries he sustained when he tripped and fell on a sidewalk. A jury rendered a verdict for plaintiff. Defendant timely appealed. We affirm.

BACKGROUND

On August 6, 2003, Nick Nickon sustained injuries after falling on a sidewalk located on Main Street in Princeton. This sidewalk was located on a State of Illinois right-of-way for Illinois Route 26 which is known as Main Street within the city limits of Princeton.

When defendant made improvements to the roadway on Main Street in downtown Princeton, defendant and the State negotiated to share the costs. The Illinois Department of

-1-

Transportation (IDOT) agreed to maintain the traffic lanes after completion of the project and the city agreed to maintain the sidewalks. In accordance with that agreement, over the course of the last decade prior to the accident in this case, defendant made repairs to the Main Street sidewalk.

Before trial, the trial court allowed defendant's motion *in limine* to prohibit testimony regarding previous injuries sustained by another person at the same location on Main Street. During trial, Georgianne Johnson testified that one year before plaintiff's fall she stepped into the same depression and fell. However, Johnson also testified that she sustained injuries as a result of her accident in August 2002. Defendant objected to this portion of her testimony. The court sustained defendant's motion to strike the testimony for being in violation of the pretrial order granting defendant's motion *in limine*. The court instructed the jury to disregard that portion of the answer. The court also allowed Johnson to explain to the jury that her injuries were minor and did not require medical attention.

During trial, plaintiff introduced evidence of medical bills for his injuries totaling $119,723.11. Defendant attempted to produce evidence that the medical care providers discounted the charges after receiving the Medicare payment. However, the court prohibited defendant from introducing any evidence to the jury that demonstrated Medicare paid a reduced amount, $34,888.61 in total, as payment in full for the medical bills. The trial court employed the collateral source rule and did not permit the jury to hear evidence of the significant reduction of charges.

The jury rendered a verdict in favor of plaintiff and against defendant in the amount of $170,800, which included initially billed medical charges of $119,000.00. Following the jury verdict, defendant filed a two-part posttrial motion. The trial court denied defendant's posttrial

requests for judgment notwithstanding the verdict on the issue of an open and obvious defect on the sidewalk. The court also denied defendant's posttrial request for set-off or reduction of the verdict to reflect the amount actually paid by Medicare. Defendant appealed.

We will recount additional facts as relevant to our analysis.

ANALYSIS

Defendant raises five issues on appeal. First, defendant contends the trial court erred in entering summary judgment on the issue of "control" of the sidewalk where plaintiff was injured. Second, defendant asserts that plaintiff's violation of the trial court's order *in limine* precluding evidence of a prior injury to another person on the same sidewalk requires reversal. Third, defendant argues that the trial court erred by denying defendant's tendered jury instruction concerning immunity. Fourth, defendant submits that the trial court erroneously denied a posttrial motion to set-off or reduce the jury award and an alternative request for judgment in favor of defendant notwithstanding the verdict. Finally, defendant contends that the jury should have been allowed to consider the actual amount Medicare paid for plaintiff's medical bills. We will address the collateral source issues first and foremost.

Defendant raises two issues regarding the Medicare payment in this case. First, defendant argues the jury should have been allowed to consider evidence that the health care provider accepted a Medicare payment in the amount of $34,888.61 as payment in full for charges originally billed at $119,723.11. Plaintiff asserts the trial court correctly applied the collateral source rule by prohibiting the introduction of this evidence. Defendant contends the Medicare payment does not qualify as a collateral source under Illinois law.

Next, in a related issue, defendant claims the trial court erroneously denied its posttrial

motion for set-off or reduction of the jury's award. Defendant claims the jury award for medical expenses should be reduced to the amount actually paid by Medicare, $34,888.61. Alternatively, defendant asserts the amount Medicare paid, $34,888.61, should be further adjusted downward by the 30% measure of comparative fault the jury attributed to plaintiff.

Regarding both issues, defendant relies heavily on the dissent in *Arthur v. Catour*, 216 Ill. 2d 72 (2005). For purposes of our analysis, it is important to understand the issue in *Arthur* came before the reviewing courts on a certified question raised before the jury trial began. This certified question was whether "plaintiff will be limited to seeking compensatory damages not exceeding those actually paid to her medical providers." *Arthur*, 216 Ill. 2d at 76.

To answer that question in the context of the case on review in *Arthur*, the supreme court had to determine whether the collateral source rule extends to the entire amount initially charged for medical services, even when those services are later discounted by the provider when paid by a third party. Significant to the court's analysis in *Arthur* was the amount the medical provider "expected" as payment when initially billing for the services, not the amount the medical provider "accepted" from a third party as payment in full. So considered, the court's unequivocal answer to the certified question was, "Plaintiff may present to the jury the amount that her health-care providers initially billed for services rendered." *Arthur*, 216 Ill. 2d at 83. This answer was consistent with well established precedent.

With a great degree of foresight and long before *Arthur,* our supreme court carved a single exception to the collateral source rule. First recognized in this District nearly one hundred years ago, this exception dictates collateral sources should not include services provided by charitable providers without charge, *i.e.*, without generating an initial bill. *Peterson v. Lou*

-4-

*Bachrodt Chevrolet Co.*, 76 Ill. 2d 353, 363 (1979) (citing *Adams Co. v. George*, 227 Ill. 64, 69 (1907)).

In *Peterson*, the medical provider was the philanthropical Shriner hospital, renowned for generously providing medical care for children free of charge to the family. Defendant seeks to expand *Peterson* beyond gratuitous medical care to the situation presented in the case at bar. The exception developed by the court in *Peterson*, does not apply in our case since the medical provider clearly billed for the services in expectation of payment, unlike the Shriner hospital in *Peterson*. We refrain from applying the decision in *Arthur* to expand the reach of *Peterson* to services initially billed but subsequently discounted for a third party payor.

Our decision today relies heavily on the blueprint provided by our supreme court in a line of cases discussing the collateral source rule. The court has stated the collateral source rule does not allow a wrongdoer to take advantage of "contracts *or other relations* that may exist between the injured party and third persons." (Emphasis added.) *Wilson v. Hoffman Group, Inc.,* 131 Ill. 2d 308, 320 (2005). Clearly, the *Wilson* court foresaw the possibility that relationships "other than" those arising from a contract of insurance may constitute collateral sources for payment. Thus, the rule of *Wilson* is not limited only to contractual payments. The injured party in this case had a relationship "other than" a contract with the collateral source. Here, plaintiff's relationship with Medicare arose because of his previous employment, his past contributions, and his current age.

Relying on the dissent in *Arthur*, defendant seeks to cast Medicare into a separate category which would not be protected by the collateral source rule. In her dissent, Chief Justice McMorrow characterized the majority's answer to the collateral source issue in *Arthur* as "no

answer at all." *Arthur*, 216 Ill. 2d at 87 (McMorrow, C.J., dissenting). However, based on our reading of *Arthur*, the majority provided a concise answer to the specific evidentiary question as posed without equivocation or conditional parameters. "Initially billed" is not difficult to understand when considering evidence to be submitted to the jury. "Initially billed" has no bearing on "ultimately paid."

By focusing on the amount initially billed, the *Arthur* court's decision recognizes a practical reality. That is, if a government agency or insurance company does not pay the patient's bill at the reduced rate offered to the third party payor, liability for the amount initially billed falls squarely on the patient's financial shoulders. This liability is not relieved until payment is received from any source, thereby triggering the collateral source rule.

The supreme court's answer to the evidentiary question in *Arthur* preempts the endless discussion of distinguishing details concerning who pays medical charges on behalf of an injured party. This practical answer to the collateral source question is easily applied without reference to the source of the payment. Pursuant to *Arthur,* simply give the jury the initial bill and move on with the evidence. After a verdict is rendered, the trial court may consider a motion to reduce the award, as was done in this case.[1]

The certified question in *Arthur* is identical to the evidentiary issue presented to the trial judge in this case. We conclude the trial court correctly applied *Arthur* to preclude introduction of reduced payments to the jury.

---

[1]We are aware of the Fourth District's decision in *Wills v. Foster*, 372 Ill. App. 3d 670 (2007), *appeal pending* No. 104538, adding Medicare and Medicaid exceptions to the collateral source rule. We choose not to follow the majority's rationale in that decision, and we anticipate the Illinois Supreme Court will provide further guidance on the issue.

Next, defendant claims the trial court erred when it denied the posttrial motion for set-off or reduction of the jury award in this case. This issue is procedurally distinct from *Arthur*. On a motion for set-off or reduction, we must consider whether our supreme court's decision in *Peterson* limits plaintiff's recovery and requires a reduction of the award.

To determine whether the *Peterson* exception applies, we must examine whether the medical service provider in this case intended to grant the patient gratuitous services regardless of the source of payment. If, as in *Peterson*, the medical provider intended not to charge the patient for services or a portion of those services, the payment is not a collateral source payment. However, if the medical provider accepted a reduced payment from a third party which the medical provider otherwise would not have granted to the patient without the involvement of the third party, the payment is a collateral source payment.

To interpret *Peterson* any other way lends itself to endless analysis of the minute differences in each case related to the relationship between payor and patient, depending on whether Medicare or Medicaid paid for services, and whether the insurance company was paid by the injured person or someone else, such as patient's husband in *Arthur*. These considerations create a plethora of possibilities to tantalize the most skillful advocates and curious legal scholars, but this type of complexity is not necessary.

In the context of a motion for set-off or a reduction of the verdict, a collateral source rule that depends on the status of the injured party to the agency paying the medical bills would give the word "angst" a new meaning to those sitting on the trial bench. Insurance companies and other agencies receive large volume discounts arising from ongoing relationships with the medical providers unrelated to the medical providers' relationship with the injured party. A

reduction of charges based on a high volume allowed to a third party payor is not the correct measure for consequential damages to the individual suffering the injury. The injured party would have been responsible for all charges, or perhaps billed at an even higher rate, had a private insurer or Medicare not been forthcoming with payment.

As an ancillary issue, defendant claims the trial judge erred prior to trial by refusing to allow a witness to testify that the reduced charges were fair and reasonable for persons 65 years of age or older. By implication, the testimony would have established the initial bill was excessive. Defense counsel suggested that the reduced charges were relevant to the reasonableness of the initial billed medical services. However, the trial court quickly pinpointed the flaw in this proposition. The trial court stated, "If the only reason such a witness would offer [reduced fees] vis-à-vis a patient over 65 is because Medicare pays a discounted amount, then that's off limits."

The trial court correctly recognized defendant offered this evidence to introduce the collateral source payment to the jury through the back door. The tactic was contrary to the purpose of the collateral source rule and was properly rejected by the court before the trial began. Furthermore, we note the record does not establish defendant had such a witness available to testify. An offer of proof was not tendered either during trial or at the motion hearing. Accordingly, the court did not err in rejecting defendant's challenge based on "reasonableness" of the charges to Medicare.

Defendant raises several contentions of error in addition to the collateral source issues discussed above. First, defendant contends that the trial court erred in entering summary judgment in favor of plaintiff on the issue of control of the sidewalk. Defendant argues that it did

not have responsibility to maintain the sidewalk which was owned by the State of Illinois. Since IDOT did not compensate defendant for the maintenance of the sidewalk, defendant submits that control of the sidewalk constituted a disputed issue of material fact.

We consider the circuit court's ruling on a motion for summary judgment *de novo*. *Delany v. McDonald's Corp.*, 158 Ill. 2d 465, 467 (1994). Summary judgment is proper if the pleadings, depositions, and admissions on file, viewed in the light most favorable to the nonmoving party, show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2002); *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 228 (2007).

The parties agree the sidewalk where plaintiff fell was located on an IDOT right-of-way. However, on September 2, 1986, and later on August 23, 1996, the state and defendant entered into contracts which required defendant to maintain the sidewalks adjacent to the state highway along Main Street for as long as Illinois Route 26 served as Main Street in Princeton. The State agreed to pay a portion of the roadway improvements to Main Street. In exchange for improvements at the state's expense, defendant agreed to control and pay for maintenance of all other improvements to Main Street, including "all parking lanes, curbs, gutter flags, sidewalks, manholes, catch basins, storm sewers, utilities and appurtenances." Based on the clear language of the contracts, the trial court determined defendant controlled the sidewalk.

In addition, undisputed evidence established defendant repaired the Main Street sidewalk both before and after the incident in this case. Several years before plaintiff's fall, defendant repaired areas of the sidewalk on Main Street by pouring new concrete. After the accident in this case, defendant repaired the area where plaintiff stumbled and fell. We conclude the trial

court correctly found there was no genuine issue of material fact concerning control of the sidewalk. Consequently, we hold the trial court properly entered summary judgment in favor of plaintiffs on the issue of control of the sidewalk.

Next, defendant demands a new trial because plaintiff violated the court's order granting defendant's motion *in limine*. This pretrial ruling prohibited Georgianne Johnson from testifying that on a prior occasion she also suffered an injury from a fall at the same location on Main Street. The court ruled that Johnson's testimony was relevant on the issue of notice regarding the condition of the sidewalk but prohibited her from testifying regarding her injury. Defendant contends Johnson's testimony, which indicated she fell and also suffered minor injuries, was prejudicial.

Following a general introductory question by plaintiff's attorney, Johnson volunteered that she fell and was injured. Defendant immediately objected to the testimony. The trial court struck the portion of Johnson's answer concerning her injury and instructed the jury to disregard the answer. After counsel and the court conferenced the issue, Johnson was permitted to further explain that her injury was minor and did not require any medical attention. Defendant did not object to this explanatory testimony.

Generally, any prejudicial impact of an error may be cured if the trial judge sustains an objection and instructs the jury to disregard the objectionable testimony. *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 383 (2003). Based on our review of the record, we find the judge's instruction to the jury to disregard the portion of Johnson's testimony that violated the motion *in limine*, together with Johnson's subsequent clarifying testimony, cured any prejudice that may have occurred. Accordingly, we determine the court's treatment of the testimony did not

-10-

constitute reversible error.

Another contention of error raised by defendant pertains to defendant's instruction No. 15, which the trial judge refused. Defendant's instruction addressed statutory municipal immunity, as defined in section 3–102 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/3–102 (West 2002)). Defendant's tendered instruction No. 15 stated a local public entity has a duty to maintain property in a reasonably safe condition for foreseeable uses and shall not be liable unless the public body has constructive notice of a condition which is not reasonably safe. Defendant contends serious prejudice resulted from the trial court's refusal to give the instruction. However, defendant does not describe the serious prejudice caused by the trial court's refusal to allow the instruction.

Plaintiff argues that defendant's instruction No. 10, which incorporated IPI, Civil, No. 120.08 (Illinois Pattern Jury Instructions, Civil, No. 120.08 (2005 ed.) (hereinafter IPI Civil (2005)), adequately stated the law and that defendant's tendered instruction No. 15 was redundant. Defendant's instruction No. 10 stated, in relevant part:

"In order to recover damages, the plaintiff has the burden of proving:

First, there was a condition on the property which presented an unreasonable risk of harm to people on the property.

Second, the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk.

Third, the defendant could reasonably expect that people on the property would not discover or realize the danger.

Fourth, the defendant was negligent in one or more of the following ways:

-11-

(a)   Permitted and allowed the sidewalk at the location aforesaid to be and remain in an uneven and depressed condition when defendant knew, or by the exercise of ordinary care should have known, that such condition created a situation of imminent danger for persons, such as plaintiff, walking thereon;

(b)   Failed to repair the uneven and defective sidewalk at the location aforesaid when defendant knew, or in the exercise of ordinary care should have known, that such repair was necessary to ensure the safe conduct of persons, such as plaintiff, walking thereon;

(c)   Maintained the sidewalk at the location aforesaid in an uneven and defective condition for an unreasonable length of time.

Fifth, the plaintiff was injured.

Sixth, the defendant's negligence was a proximate cause of the plaintiff's injury."

Supreme Court Rule 239(a) (177 Ill. 2d R. 239(a)) requires a trial court to instruct the jury pursuant to the Illinois Pattern Jury Instructions when applicable in a civil case, unless the trial court determines that the IPI instruction does not accurately state the law. "The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). On review, we must determine whether, "taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz*, 201 Ill.2d at 273-74.

In *Livings v. City of Chicago*, 26 Ill. App. 3d 850 (1975), the trial court denied an instruction tendered by the defendant that was almost identical to the instruction proposed by defendant in this case. The appellate court affirmed the trial court, finding that the other IPI jury instructions adequately informed the jury of the issues of notice and the plaintiff's burden to prove the claims. *Livings*, 26 Ill. App. 3d at 853.

We have reviewed defendant's proposed instruction and the other IPI instructions given to the jury here. We note that, since plaintiff was walking on the sidewalk when the injury occurred, the foreseeable use component of Tort immunity Act is not relevant to the facts of this case. Additionally, constructive notice to the city was a required element included in defendant's instruction No. 10, which the trial court allowed. We conclude the jury was adequately and correctly instructed on the law. Accordingly, we hold the trial court did not abuse its discretion by refusing the redundant jury instruction.

Finally, defendant submits that the trial court should have granted its motion for judgment notwithstanding the verdict, because plaintiff failed to prove that "people on the property would not discover or realize the danger" of the depression. We review the trial court's denial of a judgment notwithstanding the verdict motion *de novo*. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999).

A " '[j]udgment notwithstanding the verdict should not be entered unless the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.' " *McClure*, 188 Ill. 2d at 131-32 (quoting *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 109 (1997)). In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, we may not substitute our

judgment for the jury's, nor may we re-weigh the evidence or determine the credibility of witnesses. *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53 (1992).

Defendant denies liability in this case because the depression in the sidewalk was "open and obvious." We disagree. The photographs entered into evidence show a small depression similar in color to the sidewalk, but partially covered by weeds. The photographs depict the depression from different distances and demonstrate the extent of the depression was not visible until the photographer's camera was almost directly above the depression. The indentation tapered from zero at the east edge to 2-1/4" at the west edge. However, the west edge and deepest portion of the crevice was not readily visible. In fact, Steve Wright, the superintendent of streets for defendant, testified that he considered the depression to be a dangerous hole.

Moreover, plaintiff testified that he was distracted by approaching the busy intersection and watching for cars. As plaintiff notes, the issue of whether "people on the property would not discover or realize the danger" of the depression was one of fact. The jury carefully balanced the evidence and found plaintiff 30% negligent. Thus, it was reasonable for the jury to conclude that a person walking on the sidewalk would not discover or realize the danger of the depression. Based on the evidence presented at trial, we cannot say that the evidence so overwhelmingly favored defendant that no contrary verdict could ever stand. We therefore conclude the trial court did not err in denying defendant's motion for a judgment notwithstanding the verdict.

CONCLUSION

The trial judge demonstrated a solid understanding of the collateral source rule and properly applied it to the collateral source issues in this case. Based on our review of the record, we find no reversible error with respect to the other issues raised in this appeal. Accordingly, we

affirm the judgment of the circuit court of Bureau County.

Affirmed.

McDADE and O'BRIEN, JJ., concurring.