# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Collection Professionals, Inc. v. Schlosser*, **2012 IL App (3d) 110519**

---

| | |
|---|---|
| Appellate Court Caption | COLLECTION PROFESSIONALS, INC., Plaintiff-Appellee, v. MORGAN SCHLOSSER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0519 |
| Filed | September 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to collect for the medical services provided to defendant during her pregnancy and the birth of one of her children while she was uninsured and not receiving public benefits for medical services, the trial court did not err in preventing defendant from introducing evidence that the providers involved routinely accepted less than the billed amount for purposes of showing that the billed amount was not the providers' customary charges. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 10-SC-2171; the Hon. Daniel J. Bute, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on          John Grivetti, of Wenona, for appellant.
Appeal

                    Robert B. Steele and Natasha G. Steele, both of Aplington, Kaufman,
                    McClintock, Steele & Barry, of La Salle, for appellee.


Panel               JUSTICE WRIGHT delivered the judgment of the court, with opinion.
                    Justices Holdridge and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant received medical treatment, services, and lab work from Illinois Valley Community Hospital and Health Clinics, St. Margaret's Hospital and Community Health Clinics, and Hospital Radiology Service at a time when defendant was both uninsured and not receiving any public benefits regarding medical services. Plaintiff, a collection agency, filed a complaint on November 9, 2010, as assignee, asking the trial court to enter a judgment against defendant for the full amount of the medical bills totaling $8,906.16, plus attorney fees of $250 and court costs.

¶ 2     During the bench trial, plaintiff presented undisputed evidence that defendant received medical services billed in the amount totaling $8,906.16 during 2007 and 2008 for pregnancy-related treatments. It was also undisputed that, when defendant requested these medical services, she was unemployed and signed paperwork indicating she was uninsured and would be responsible for the payment of the medical treatment she was about to receive.

¶ 3     Defendant's attorney attempted to cross-examine plaintiff's witness regarding whether the medical provider accepted less than the entire billed amount to satisfy the bills from other patients. The court sustained plaintiff's objection to this line of inquiry.

¶ 4     At the close of the evidence, the trial court found that plaintiff complied with the requirements of the Fair Patient Billing Act (210 ILCS 88/1 *et seq.* (West 2010)) and proved that the entire billed amount reflected the usual and customary amount for similar services performed by other providers in the area. The court entered judgment for plaintiff in the amount of $9,156.16 plus attorney fees of $250 and court costs. We affirm.


¶ 5                             BACKGROUND

¶ 6     Plaintiff-appellee Collection Professionals, Inc. (plaintiff), became the assignee of defendant's unpaid past-due accounts for medical services provided to defendant by Illinois Valley Community Hospital and Health Clinics (IVCH), St. Margaret's Hospital and Community Health Clinics (St. Margaret's), and Hospital Radiology Service for pregnancy-related medical services she received in 2007 and 2008. At the time defendant received these

medical services related to her pregnancy, she was uninsured, unemployed, and not receiving any type of public assistance. At the time she requested services, she agreed in writing to be personally responsible for the payment for those services.

¶ 7    On November 9, 2010, plaintiff filed a small claims complaint alleging defendant owed $453 to Hospital Radiology Services, $2,356 to St. Margaret's, and $6,097.16 to IVCH for medical treatment and services provided to defendant. The complaint asked for judgment to be entered for that amount plus attorney fees in the amount of $250, for a total amount of $9,156.16. Defendant requested a bench trial, which occurred on June 27, 2011.

¶ 8    During trial, plaintiff called Janette Kneebone, the patient accounts director for St. Margaret's, who presented defendant's signed written agreement to pay for services before defendant received medical treatment, lab and radiology tests, and services from St. Margaret's health care providers in October, November, and December of 2007, and February and April of 2008. This included treatment provided at St. Margaret's clinics, for follow-up OB/GYN treatment and lab tests for defendant. Kneebone testified the total amount billed for medical services defendant received at St. Margaret's included only the usual and customary charges that were consistent with the amount charged by other medical providers in the area for the very same health services. To assure their charges were reasonable and customary charges, Kneebone said St. Margaret's periodically reviewed charges from other medical providers in the area for the same health services, as well as purchasing explanation of benefits information from insurance companies regarding amounts they paid for medical treatment services, fee schedules, and Medicare fee schedules. Kneebone stated St. Margaret's billed all patients the same amount for the respective health care services provided regardless of the source of payment.

¶ 9    During cross-examination, defense counsel asked Kneebone whether these customary medical charges were "in any way reflective [of] what is normally received" for the same services and whether they "receive the same amount from either a patient or a third party for all services." Plaintiff's counsel objected to this line of questioning on cross-examination. In response, defense counsel argued the court should consider whether St. Margaret's accepted less than the billed amount to settle other patient's accounts as a factor to ascertain the reasonable and customary charges for health care services. The court sustained plaintiffs' attorney's objection.

¶ 10    Defendant's attorney asked Kneebone whether she prepared a written document for her records stating that she "reasonably met the condition of 210 Illinois Compiled Statutes 88/30?" Kneebone answered, "I don't know what that statute is." Then, defendant's attorney clarified that he was referring to the section of the Fair Patient Billing Act which provided that legal action may not be initiated against a patient for nonpayment of a hospital bill without "written approval of an authorized hospital employee who reasonably believes conditions for pursuing collection action have been met." Defendant's counsel asked if there was any written document in the file stating that the hospital had complied with that statute. After a recess, defendant's attorney restated the question, asking Kneebone whether she or any other St. Margaret's employee had "certified" in writing that they had complied with the Fair Patient Billing Act (210 ILCS 88/30(c) (West 2010)) prior to the filing of the current collections lawsuit. Plaintiff's attorney objected, but the court allowed the witness to testify

that she had not prepared a written certification that she complied with the Act. Kneebone thereafter, based on the attorney's questioning, described the procedure used to encourage patients to pay any outstanding bills, as follows:

> "Originally, the patient would have gotten a statement that said they needed to call us within thirty days to set up a payment plan or to pay in full. She [defendant] received statements and she also received letters. We also sent more than one charity application out to the patient. We didn't get a return call."

¶ 11    Kneebone stated that, on November 16, 2008, she sent a letter to defendant offering her to pay a reasonable payment plan of $300 per month, along with a charity application in the event defendant could not afford the monthly payments. Defendant returned the completed charity application, but failed to include the requested income information. Defendant did not make any payments toward the bill, failed to respond to a second letter from Kneebone, and did not provide income verification for the charity application, such as pay stubs, tax returns, bank statements, or social security or other benefits documentation.

¶ 12    Kneebone said the only time defendant contacted her by telephone was on October 22, 2009, when defendant reported she either was eligible for, or currently receiving, public aid and public aid would pay the bill. However, Ms. Kneebone stated a patient only has a year to provide this information and this phone call was more than a year after the treatment.

¶ 13    The parties stipulated that the testimony of the account director at IVCH would be substantially the same as that of Ms. Kneebone and the outstanding amount of unpaid bills for medical treatment and services rendered to defendant at that hospital was $6,097.16, plus an unpaid radiology bill for an ultrasound totaling $453.

¶ 14    Next, defendant testified that she had an appointment with Dr. Whatcott[1], an "O/B" doctor, on February 19, 2008, for an ultrasound. While at that appointment, defendant stated that she told the secretary she had no income to pay for the treatment and the secretary gave her some paperwork to fill out and told her the costs for her medical treatment for her pregnancy would be covered by the state. Defendant stated that she submitted a charity application to both hospitals but did not submit financial information to either health care provider because she was unemployed and did not have any pay stubs. Eventually, defendant became employed at the "Horizon House," at $10.13 per hour for 32 hours per week. Defendant testified it was her understanding that the state would pay the bills for her medical treatment for her pregnancy in the instant case. Defendant said she also subsequently became pregnant a second time and all of those bills were paid by the state.

¶ 15    At the close of the evidence, the court found, first, that the medical providers complied with the Fair Patient Billing Act and, then, entered judgment for plaintiff in the total amount of $9,156.16, which included $250 for attorney fees, plus court costs. Defendant filed a timely notice of appeal.

---

[1]The records show this doctor was affiliated with St. Margaret's clinics.

¶ 16                                    ANALYSIS

¶ 17        On appeal, defendant claims that the court erred by barring defendant's questions about whether the medical provider regularly accepted less than the billed amount to settle outstanding accounts of other patients who received the same services provided to defendant. Defendant asserts this line of inquiry was relevant to the issue of whether the undisputed bills reflected the reasonable and customary charges for the medical services provided. Defendant also argues the medical providers did not comply with the Fair Patient Billing Act.

¶ 18        It is well established in situations where there is an express or implied contract for one party to supply services to another, with no provision as to the specific amount the supplier is to be compensated, the law implies that there is an agreement to pay a reasonable price for the goods and services. *Victory Memorial Hospital v. Rice*, 143 Ill. App. 3d 621, 623 (1986); *Protestant Hospital Builders Club v. Goedde*, 98 Ill. App. 3d 1028, 1031 (1981). To recover under this type of contract, the hospital must not merely submit billings for services provided, but must prove that the charges are reasonable. *Victory Memorial*, 143 Ill. App. 3d at 624-25.

¶ 19        The cases cited by both parties explain that a hospital must establish that its charges are reasonable in that they are the usual and customary charges of that particular hospital and are comparable to the billed charges of other area hospitals. See *Sherman Hospital v. Wingren*, 169 Ill. App. 3d 161, 164 (1988); *Victory Memorial*, 143 Ill. App. 3d at 625. In this case, it is undisputed the billed amounts at issue reflected the usual and customary amount charged or billed to patients by other medical providers in the area for the same health services.

¶ 20        Illinois courts have held that the assessment of the reasonableness of the charges for the medical services provided is strictly a question of fact and a provider seeking recovery for services rendered must prove only that its charges are reasonable by showing they are customary and usual as compared to other area hospitals. *Sisters of the Third Order of St. Francis v. Summerson*, 217 Ill. App. 3d 377, 380 (1991) (citing *Sherman Hospital v. Wingren*, 169 Ill. App. 3d 161 (1988)); see also *Majid v. Stubblefield*, 226 Ill. App. 3d 637, 642 (1992). In *Majid*, this court extended the holdings in the *Victory Memorial Hospital* case, which dealt solely with hospital bills, to cases involving doctors' fees for medical services rendered at clinics. *Majid*, 226 Ill. App. 3d at 642.

¶ 21        The issue raised in this appeal is whether the trial court erroneously prevented defendant from attempting to present evidence to the trial court to prove plaintiff routinely accepted less than the entire billed amount to show the billed amount in this case did not reflect this provider's customary charges. It is well established that the admission of evidence is within the sound discretion of the trial court and a reviewing court will not reverse the trial court unless that discretion was clearly abused. *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993).

¶ 22        After carefully researching this narrow issue to determine if the court abused its discretion by restricting cross-examination, we conclude there is no case law directly on point. However, our decision in *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095 (2007), provides helpful guidance even though the circumstances in that case are not completely analogous to the case at bar.

¶ 23        In *Nickon*, plaintiff introduced evidence in the form of the medical bills to establish the

amount of actual damages in a personal injury action. *Id.* at 1097-98. The defense sought to introduce evidence demonstrating the medical provider, in that case, accepted a significantly reduced amount from a collateral source to satisfy plaintiff's account. *Id.* at 1098. Specifically, although the plaintiff in that case received a bill for $119,723.11, the medical provider accepted Medicare's discounted payment of $34,888.61 in full for satisfaction for all medical charges originally billed at a much higher rate. *Id.* In that case, the defense asserted the discounted payment, rather than the amount billed, should be considered by the trier of fact when evaluating the reasonableness of the original medical charges. *Id.* at 1102. When upholding the trial court's decision to bar the evidence of a discounted payment, we held the "initially billed" or full amount was the appropriate measure of the charges to be considered by the jury, regardless of the amount " 'ultimately paid.' " *Id.* at 1100. Recognizing the instant case does not involve the collateral source rule, a similar result is required here.

¶ 24        In this case, we conclude it is not relevant whether the collateral sources of *other* patients ultimately paid less than the initially billed amount based on a contractual agreement between the medical provider and the third party. Here, it is undisputed a third party or collateral source did not come forward to pay any portion of defendant's medical charges. In addition, defendant specifically agreed to pay for the medical sources before she received services from these medical providers. Finally, it is undisputed that all patients are billed the same amount for these services, which was comparable to the fees charged by other medical providers in the area for the same services. This evidence satisfied plaintiff's burden of proof to demonstrate the reasonableness of the charges reflected in plaintiff's initial bill.

¶ 25        When determining whether the billed amount reflected only usual and customary charges in this case, it was not relevant whether the medical provider seeking full payment from *this* patient may have accepted discounted payments from a collateral source toward another patient's bill, based on a contract between that collateral source and the medical provider. However, in this case, if defendant demonstrated the medical provider accepted a payment from the same collateral source toward *this* defendant's bill for similar medical services, that information could have been relevant.

¶ 26        Next, defendant contends that since Kneebone admitted, during her testimony before the court, that she was unaware of the statute and not certain whether she complied with "210 Illinois Compiled Statutes 88/30," a portion of the Fair Patient Billing Act, plaintiff did not establish compliance with the statutory requirements which must precede legal action initiated by the medical provider to secure payment for services. Additionally, defendant submits that, since plaintiff did not introduce copies of the correspondence Kneebone allegedly sent to defendant, plaintiff did not prove compliance with the Fair Patient Billing Act.

¶ 27        The Fair Patient Billing Act provides steps to follow to pursue a collection or legal action against an uninsured patient. 210 ILCS 88/1 *et seq.* (West 2010). Specifically, a hospital must allow the patient the opportunity to assess the accuracy of the bill, apply for financial assistance, and offer a reasonable payment plan. 210 ILCS 88/30(a), (b) (West 2010).

¶ 28        In the instant case, the trial court specifically found that the medical providers complied

with the Fair Patient Billing Act. On review, this court may only set aside a trial court's findings of fact where it is shown that those findings are contrary to the manifest weight of the evidence. *Greene v. City of Chicago*, 73 Ill. 2d 100, 110 (1978).

¶ 29 In this case, the record shows Kneebone sent several letters to defendant along with the bills; attempted to contact defendant by telephone; and suggested a payment plan of $300 per month toward the bill. Defendant admitted to receiving some of these letters and returned a completed charity application included with one of the letters. In addition, when defendant returned an incomplete charity application, Kneebone sent defendant another letter, to the same address, explaining the nature of the additional information required. Defendant also told the court she did not respond to letters and phone messages because she thought the state would pay. Although defendant contacted Kneebone by telephone once, more than one year after her treatment, it was too late to submit the additional information for processing.

¶ 30 Here, the trial court was in a superior position to judge the credibility of the witnesses. See *Greene*, 73 Ill. 2d at 110. The absence of a copy documenting the letter dispatched to defendant is inconsequential because defendant admitted receiving the letter, which included a suggested $300-per-month payment plan, and returned a completed charity form Kneebone included with that communication. Defendant also testified that she received some of the billings for the medical services and sometimes she received forwarded mail, and sometimes she did not receive her mail. With regard to whether Kneebone testified truthfully about dispatching the charity application denial letter, before beginning the formal collection process, the court obviously found her testimony truthful. Based on the record, we conclude the court's finding in this regard is not against the manifest weight of the evidence.

¶ 31                                                 CONCLUSION

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

¶ 33 Affirmed.