2026 IL App (1st) 241979-U

FIFTH DIVISION
January 28, 2026

No. 1-24-1979

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ROSA FRATTO, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 22 L 005816 |
| ILLINOIS SPORTS FACILITIES AUTHORITY, | ) | |
| CHICAGO WHITE SOX, LTD., AND CWS | ) | The Honorable |
| MAINTENANCE COMPANY, | ) | Michael F. Otto, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the trial court is reversed. The trial court erred when it granted summary judgment to defendants because questions of fact exist about whether the dangerous condition on defendants' premises was open and obvious and whether the distraction exception applies.

¶ 2                           I. BACKGROUND

¶ 3      This appeal stems from a negligence action brought by Rosa Fratto against Defendants Illinois Sports Facilities Authority, Chicago White Sox, Ltd., and CWS Maintenance Company after she tripped and fell on their property.

¶ 4      For 29 years, Rosa Fratto sold concessions during White Sox baseball games at Guaranteed Rate Field. Her daughter, Elena Mancari, also worked at Guaranteed Rate Field during the games. They were both seasonal employees, employed by a food and beverage company called Illinois Sportservice.

¶ 5      On October 29, 2021, Fratto and Mancari went to Guaranteed Rate Field to return their employee identification badges to their employer at the end of the baseball season. To get to the Illinois Sportservice office inside the stadium, they walked down the same service tunnel they had used to get to the office at the start of each one of their shifts. The tunnel was approximately 20 to 25 feet wide, and was used as a pedestrian walkway, a cart path, and for storage. Items were stored along the outer wall of the tunnel, and a clear path for pedestrians and cart traffic was left open towards the inner wall of the tunnel. Defendants' witness described the service tunnel as a "living, breathing, active area."

¶ 6      As Fratto and Mancari walked through the tunnel, nothing obstructed their pathway to the Illinois Sportservice office. Then, Mancari noticed a large mural depicting a life-size image of star Chicago White Sox player, José Abreu, on the right side of the tunnel. The mural was approximately eight feet tall, and was supported by a frame made of two by four lumber. The legs of the frame were also made of two by four lumber. The legs were painted white, were attached to

either side of the mural frame, and extended behind and in front of the mural, with the front legs protruding into about the center of the tunnel.

¶ 7 During the 2021 baseball season, the Abreu mural, along with other life-size murals of White Sox players, were displayed on the concourse level of the Guaranteed Rate Field. The murals attracted patrons to stand in front of them and have their pictures taken. However, the record is not clear how the murals were displayed on the concourse level, including whether the same two by four lumber was used to hold the murals upright and whether the lumber protruded into the concourse level tunnel used by the many hundreds and thousands of baseball patrons at any given time during a game. The mural was to be sold at auction at the end of the White Sox baseball season, and was stored in the service tunnel, along with other murals behind it, until then. That is where Fratto and Mancari encountered the Abreu mural.

¶ 8 As Fratto and Mancari were walking in the service tunnel, Mancari grabbed Fratto's arm, pointed out the Abreu mural as they were directly in front of it, and asked Fratto if she would like her picture taken in front of it. Fratto said yes, walked over to the mural, and stood between the white legs of the mural's frame to have her photo taken. After Mancari took the photo, Fratto turned right to walk away and tripped over the mural's leg. She was not paying attention to where she was walking and did not see the white wooden leg in front of her before she fell. During her deposition, Fratto said she was not distracted by anything at the time she fell; she only remembered talking to her daughter.

¶ 9 Surveillance footage captured Fratto and Mancari approaching the Abreu mural, Fratto walking to the mural to stand in front of it, and Fratto's fall. From the video it appears that Fratto was looking directly at the mural and not at its wooden supporting base constructed of two by four

lumber. When she was shown a video of the incident during her deposition, Fratto admitted that the mural's white legs were visible.

¶ 10    When Mancari was shown the photo she took of Fratto standing in front of the mural during her deposition, she admitted that the legs attached to the artwork appeared "white and a different color than the floor" and that the mural's legs did not blend into the floor. Although she conceded that the lighting in the tunnel was not inadequate, she did not see the mural's leg before Fratto tripped over it because she was "just distracted with taking the picture." When Mancari was shown a video of the incident, she initially said the white legs of the mural were visible, but then said the whitish-gray hue of the concrete floor of the tunnel and the white legs of the mural "blended together" and made it difficult to see the legs.

¶ 11    Fratto, who sustained injuries as a result of her fall, filed suit against Defendants, alleging that they were negligent for failing to warn of an unreasonably dangerous condition and for allowing the walkway to remain in an unsafe condition. Defendants responded that they owed no duty to Fratto because the mural's legs constituted an open and obvious dangerous condition, to which no exception applied.

¶ 12    On May 22, 2024, the trial court granted Defendants' motion for summary judgment. It concluded, based on the video evidence, photographic evidence and deposition testimony, that the tripping hazard was "open and obvious." The court noted that "the legs of the mural were painted a bright white. That is plain in both the still photo and the video. And they were in contrast to the floor, which was not white. It was sort of a yellowish gray. And they were painted several inches high."

¶ 13    The court noted that there "really hasn't been any argument that the deliberate encounter exception applies," but nevertheless found there was "no evidence" that Fratto had to encounter

4

the mural, because "[t]here was more than sufficient room in which Mrs. Fratto could have proceeded without encountering the mural or the tripping hazard."

¶ 14    Next, the court considered whether the distraction exception applied. It noted that Fratto "expressly testified that she was not distracted at the time she fell" and that "all she remembered looking at was her daughter." It found "no evidence *** that would have given any of the defendants reason to foresee that Ms. Fratto or anybody would have been distracted by a family member."

¶ 15    In addition, the court found that although additional steps, like adding caution tape on the mural's legs would have imposed a "minimal burden" on Defendants, the consequences of guarding against all open and obvious conditions on their property would be significant. Therefore, the trial court found, as a matter of law, that Defendants owed no duty to Fratto and granted their motion for summary judgment.

¶ 16    After the court denied Fratto's motion for reconsideration, she timely appealed.

¶ 17                                II. ANALYSIS

¶ 18    Fratto argues that the trial court erred when it granted summary judgment to Defendants after finding that they had no duty to protect her as a matter of law. "Summary judgment is proper where the pleadings, depositions, admissions and affidavits on file, viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Bulduk v. Walgreen Co.,* 2015 IL App (1st) 150166-B, ¶ 14; 735 ILCS 5/2-1005(c) (West 2024). Summary judgment is not proper, however, "where material facts are in dispute or reasonable persons might draw different

inferences from the undisputed facts." *Bulduk,* 2015 IL App (1st) 150166-B, ¶ 14. We review a trial court's grant of summary judgment *de novo*. *Id.*.

¶ 19    "In order to prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, that the defendant breached that duty, and that defendant's breach was the proximate cause of injury to plaintiff." *Bell v. Hutsell*, 2011 IL 110724, ¶ 11. "The existence of a duty under a particular set of circumstances is a question of law for the court to decide." *Choate v. Indiana Harbor Belt Railroad Co.*, 2012 IL 112948, ¶ 22. "Absent a legal duty of care of to the plaintiff, the defendant cannot be found negligent." *Ballog v. City of Chicago,* 2012 IL App (1st) 112429, ¶ 20. While the existence of a duty may be resolved on a motion for summary judgment (*St. Martin v. First Hospitality Group, Inc.,* 2014 IL App (2d) 130505, ¶ 10), "if there is a dispute of material fact affecting the existence of an undertaking of a duty, summary judgment is improper." *Bourgojne v. Machev*, 362 Ill. App. 3d 984, 995 (2005).

¶ 20    To determine whether a duty exists, the court considers "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14.

¶ 21                                A. Open and Obvious

¶ 22    Although landowners have a common law duty to maintain public property in a reasonably safe condition (*Monson v. City of Danville*, 2018 IL 122486, ¶ 24), "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition

is open and obvious." *Bruns*, 2014 IL 116998, ¶ 16 (quoting *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003)).

¶ 23    Fratto argues that the trial court erred when it found that the legs of the mural constituted an open and obvious condition as a matter of law. She claims that "there is a dispute as to whether the Mural legs were visible to an invitee exercising ordinary care for her own safety" because there is "conflicting testimony, expert opinions, and physical evidence contained in the record on appeal." Defendants respond that there is no dispute and that the trial court properly found, as a matter of law, that the mural's legs were an open and obvious condition.

¶ 24    "[W]here no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Bruns,* 2014 IL 116998, ¶ 18. However, "where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual" (*Wilfong v. L.J. Dodd Construction,* 401 Ill. App. 3d 1044, 1053 (2010)), and the obviousness of the danger is a question for the jury. *Alqadhi v. Standard Parking, Inc.,* 405 Ill. App. 3d 14, 17 (2010). To determine whether a condition is open and obvious, the court considers "the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge." *Menough v. Woodfield Gardens*, 296 Ill. App. 3d 244, 248-49 (1998); *Foy v. Village of La Grange*, 2020 IL App (1st) 191340, ¶ 21.

¶ 25    To support her contention that a genuine issue of fact exists as to the open and obvious nature of the mural legs here, Fratto relies on *Buchaklian v. Lake County Family Young Men's Christian Association,* 314 Ill. App. 3d 195 (2000). There*,* the plaintiff sued the YMCA after she tripped and fell on a mat in the locker room. 314 Ill. App. 3d at 197-98. The trial court granted summary judgment to the YMCA, but this court reversed. *Id.* at 199, 205. We found that a question of fact remained as to whether the condition of the mat was open and obvious, and reasoned that

"[t]he evidence in the record can support a reasonable inference that the mat was difficult to discover because of its size, the lack of significant color contrast between the defect and the surrounding mat, or merely the short time that a person has in which to discover the defect as he or she takes a few steps toward the mat." *Id*. at 202.

¶ 26    Like the mat in *Buchaklian* that was "difficult to discover because of *** the lack of significant color contrast between the defect and the surrounding mat" (314 Ill. App. 3d at 202), the record here presents conflicting evidence about the visibility of the mural legs. While the photo in the record shows that the mural's white legs contrast with the color of the concrete floor of the tunnel, a fact Fratto and Mancari do not dispute, Mancari testified that the whitish-gray hue of the concrete floor of the tunnel and the white legs of the mural "blended together" and made it difficult to see the mural's legs. In addition, both Mancari and Fratto testified that they never saw the mural's legs before Fratto's fall. That multiple witnesses testified similarly in this regard may support an inference that a reasonable person in Fratto's position may likewise not have noticed the mural legs. Although the open and obvious nature of a condition "is determined by the objective knowledge of a reasonable person, not the plaintiff's subjective knowledge" *Buchaklian,* 314 Ill. App. 3d at 203 (quoting *Menough*, 296 Ill. App. 3d at 248-49), Fratto's expert, Scott Leopold, noted that Fratto's view of the mural's leg would have differed from the vantage point of the leg seen in the video footage from the surveillance camera, and therefore opined that the nature of the leg "may not [have been] readily apparent to a pedestrian exercising ordinary caution." Finally, because the service tunnel is curved, Fratto would not have been able to see what is around the bend, leaving less time to discover the potentially dangerous condition than if the tunnel was straight. See *Buchaklian,* 314 Ill. App. 3d at 202 (finding that the condition of the mat

was not open and obvious as a matter of law in part due to the short amount of time the plaintiff had to discover the defect as she walked towards the mat).

¶ 27 Based on this record, we find a genuine issue of material fact exists as to the open and obvious nature of the mural's leg, and therefore find that this issue should have gone to the jury. See *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095, 1106 (2007) (concluding that the open and obvious nature of the depression on the sidewalk "was for the jury to assess" where the photos show a "small depression similar in color to the sidewalk" that was "partially covered by weeds" and which "was not visible until the photographer's camera was almost directly about the depression").

¶ 28                                        B. Distraction Exception

¶ 29 Even if a potentially dangerous condition is open and obvious as a matter of law, Illinois courts recognize two exceptions to the open and obvious rule: the deliberate encounter exception and the distraction exception. *Bruns*, 2014 IL 116998, ¶ 20. "Exceptions to the rule make provision for cases in which 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.' " *Id.* (quoting Restatement (Second) of Torts 343A cmt. f at 220 (1965)). Fratto concedes that the deliberate encounter exception does not apply here, so we consider only the distraction exception.

¶ 30 The distraction exception applies "where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Bruns*, 2014 IL 116998, ¶ 20 (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002)). This exception only applies if a plaintiff can show that she was actually distracted, and the defendant, not the plaintiff, created the condition that caused the distraction. *Bruns*, 2014 IL 116998, ¶ 22. "The law cannot require a possessor of land to

anticipate and protect against a situation that will only occur in the distracted mind of his invitee." *Id.* ¶ 31 (quoting *Whittleman v. Olin Corp.*, 358 Ill. App. 3d 813, 817-18 (2005)).

¶ 31    Here, Fratto argues that "a genuine issue of material fact exists as to whether [she] was distracted" at the time of her fall. She argues that it was the Abreu mural itself that distracted her and caused her to fail to notice the mural's two by four wooden supporting legs on the ground. Defendants argue in response that because Fratto testified she was not distracted at the time she fell, she thereby conceded that the distraction exception to the open and obvious rule does not apply.

¶ 32    In her deposition testimony, when Fratto was asked if she was "distracted by anything" at the time she tripped, she said no. We do not agree that Fratto's response to this general question is dispositive, however, where there is other evidence in the record that she was distracted. *Cf. Deibert v. Bauer Brothers Construction Company, Inc.,* 141 Ill. 2d 430, 433-34 (1990) (finding a genuine issue of fact existed even though the plaintiff said he was not distracted as he walked to a portable bathroom on a construction site and did not say he was distracted as he left the bathroom and fell in a tire rut because the record reflected that he was looking up as he exited the bathroom to avoid being hit by construction debris based on past experience). Rather, when the evidence is viewed in the light most favorable to Fratto, we find a genuine issue of material fact exists as to whether she failed to notice the mural's legs because she was distracted by the mural itself and by the act of having her photo taken in front of it. First, when Fratto was asked during her deposition if she looked to see where she was walking as she was "taking those steps to have [her] picture taken in front of the artwork," she said she didn't see the wooden legs of the mural at all. Second, Jonathan Vasquez, Senior Director of Park Operations for the White Sox, testified that the mural had previously been displayed on the concourse level of the ballpark expressly so that individuals

could take "selfies" in front of it. Third, video footage of the incident shows Fratto and her daughter walking down the service tunnel. A large mural featuring cars and buildings is painted on the service tunnel wall, just to their left. As they get closer to the Abreu mural, which is several feet to their right, Fratto's daughter stops her. Fratto then turns toward the Abreu mural and looks at it. Her daughter pulls out her camera and motions for Fratto to go stand in front of the mural. Fratto, who is positioned between the two by four wooden legs on each side of the mural, takes five or six steps towards the mural, then turns to face her daughter to pose for the photo. She does not appear to look down at any point. After Fratto's daughter takes the photo, she turns and continues walking down the service tunnel. Fratto then turns right, and starts walking towards her daughter. She does not look down, and trips over the mural's leg, which sticks up almost four inches. We observe that a reasonable person who has just had their photo taken may want to see how their picture came out, which may have caused Fratto to look at her daughter, who was holding the camera, and not the ground as she walked. Alternatively, Fratto's attention may have been drawn to the large mural of cars and buildings on the opposite wall as she walked away from the Abreu mural.

¶ 33    When viewed in the light most favorable to Fratto, a reasonable inference may be drawn that she did not perceive the potential trip hazard posed by the mural's legs because she was distracted by looking up at the life-size image of Abreu, a home-team professional athlete, and the camera, a distraction created by Defendants for the very purpose of fan engagement through photography.

¶ 34    The intended purpose of the mural was to draw the attention of ballpark patrons so that they could be photographed with the professional athlete's life-size image in the backdrop. The record shows that the subject mural and others like it were placed on the concourse level during

the season for patrons to view and take pictures with, presumably to enhance their experience at Guaranteed Rate Field. The fact that the mural was expressly intended to draw the attention of ballpark patrons makes this case distinguishable from those where there was no evidence of an actual distraction created by the defendant. See, *e.g., Bruns*, 2014 IL 116998, ¶ 34 (finding the distraction exception did not apply when a plaintiff tripped over an uneven sidewalk when she was looking towards the door of an eye clinic instead of down at the sidewalk, reasoning that "[i]n the absence of an actual distraction" it was not reasonably foreseeable for the city to expect that a pedestrian, "generally exercising reasonable care for her own safety, would look elsewhere and fail to avoid the risk of injury from an open and obvious sidewalk defect."). Rather, this case is more analogous to *Diebert v. Bauer Brothers Construction Company, Inc.,* 141 Ill. 2d 430 (1990)*,* and *Bulduk v. Walgreen Co.,* 2015 IL App (1st) 150166-B, where distractions created by defendants prevented plaintiffs from protecting themselves from open and obvious dangers. See *Diebert,* 141 Ill. 2d at 439-40 (concluding that the distraction exception applied after a plaintiff was injured at a construction site when he fell in a tire rut after exiting a portable bathroom while he was looking up to see if construction materials were being thrown down because defendant created the distraction by allowing debris to be thrown off the balcony, making it impossible for plaintiff to both look up to check for debris and down to protect himself from tripping); *Bulduk,* 2015 IL App (1st) 150166-B, ¶¶ 22-26 (finding that the distraction exception applied where plaintiff was injured by a cleaning machine that fell on her in defendant's retail store, noting that plaintiff's "focus on finding the cosmetic items she wanted to purchase distracted her from noticing the danger the machine posed" and reasoning that because plaintiff was "performing a task, supported by defendant, in looking at the cosmetics on the shelf," it was "reasonably foreseeable that a customer *** would actually be distracted while searching the items on a shelf and not notice

the open and obvious danger posed by the large cleaning machine."). By placing a life-size mural of Abreu in a "living, breathing, active area", Defendants should have foreseen that it could serve as a distraction to individuals passing by.

¶ 35    Defendants, however, argue that Fratto was not facing the mural at the time she fell, so she could not have been distracted by it, and that any other possible distractions—like Fratto looking at or talking to her daughter—were self-created, so the distraction exception does not apply. Here, however, a reasonable inference may be drawn from the video and other evidence in the record that it was the mural—a distraction created by Defendants—that drew Fratto's attention up and away from the ground as she walked toward it and turned to have her photograph taken, just as Defendants intended, and this is what caused her to fail to discover the danger posed by the mural's legs and to protect herself against it in the first place. Moreover, because the incident occurred in a matter of seconds, we will not examine the video frame by frame to determine if Fratto should have recognized the mural's legs after she had her photo taken and in the second or two she walked away. Rather, that is a question for the fact-finder. Therefore, we find this case distinguishable from those where plaintiffs failed to discover open and obvious conditions solely because of self-created distractions. See, *e.g.*, *Wilfong*, 401 Ill. App. 3d at 1055 (finding that the distraction exception did not apply where plaintiff fell when walking over a tire rut on a construction site while talking on his cell phone, reasoning that "to any extent that talking on the cell phone was a distraction to crossing the ruts [upon which plaintiff fell], plaintiff created that distraction by answering the phone and continuing to walk across the site while talking").

¶ 36                                    C. Traditional Duty Analysis

¶ 37    The trial court determined that Defendants owed no duty to Fratto because it found, as a matter of law, that the mural's leg was open and obvious and that the distraction exception did not

13

apply. We disagree with its conclusion. As noted above, we consider four factors when determining whether a defendant owes a duty to a plaintiff: "(1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant." *Bruns,* 2014 IL 116998, ¶ 14.

¶ 38    Generally, when a condition is open and obvious, "the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* ¶ 19. However, "[w]here an exception to the open and obvious rule applies, the outcome of the duty analysis with respect the first two factors is reversed. Whereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury." *Id.* ¶ 20. (Internal quotation and citation omitted.)

¶ 39    Viewing the evidence in the light most favorable to Fratto, as we must, we find genuine issues of material fact exist regarding the open and obvious nature of the mural's legs and whether the distraction exception applies. Because these unresolved issues are directed to the first two factors of the duty analysis—the foreseeability of harm and likelihood of Fratto's injury—we cannot say as a matter of law that Defendants owed no duty to Fratto. As to the third and fourth factors, Defendants do not dispute that the magnitude of the burden of guarding against the injury is minimal, but they contend that finding a duty here would require them "to injury-proof [their] entire stadium, parking lots, service tunnels and warehouses, to protect [their] invitees from their own carelessness" and reason that "[i]mposing that standard would undermine the purpose of the open and obvious doctrine and would saddle premises owners with 'the impossible burden of rendering its premises injury-proof,' a result which our supreme court has explicitly rejected." We

do not agree that the consequences of placing the burden on Defendants weigh against the imposition of a duty and find Defendants' parade of horribles to be hyperbole, entirely unsupported by the record. Defendants do not identify a single instance of a defect it would be required to guard against. Moreover, Defendants paint with too broad a brush. We need not concern ourselves with every possible unreasonably dangerous condition in the entire ballpark, and instead, can confine our analysis to the consequences of placing the burden on Defendants to protect against trip hazards posed by the mural's legs or other similar items in the service tunnel. See, *e.g., Ward v. K Mart Corp.,* 136 Ill. 2d 132, 156 (1990) (after plaintiff collided with a concrete pole located outside of a retail store, the court found that "the magnitude of the burden on defendant to exercise reasonable care to protect its customers from the risk of colliding with the post is slight" as "[a] simple warning may well serve to remove the unreasonableness of the danger posed by the post" and reasoning that "[w]hether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact."). *Cf. Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 30 (in a case where a teenager was injured diving into a shallow part of a lake, the court found that the trial court did not err in declining to impose a duty on defendants to warn against diving into shallow waters because doing so would require defendants to "(1) measure the water level and determine the topography of the lakes' bottoms, (2) post floating warnings and cordon off those areas of the lakes to show where it is unsafe to dive, and (3) reassess the water levels and lake bottoms as necessary, depending on their fluctuations", which would "create a practical and financial burden of considerable magnitude" and could result in consequences "include[ing] the curtailment of the public's access to Petite Lake and the Chain O' Lakes as a whole, to the detriment of the public at large").

¶ 40　In sum, the trial court erred when it found no duty and granted summary judgment to Defendants because Fratto presented sufficient evidence that could impose a duty on Defendants and entitle her to recovery on her negligence claim. See *Bourgojne v. Machev*, 362 Ill. App. 3d 984, 995 (2005) ("if there is a dispute of material fact affecting the existence of an undertaking of a duty, summary judgment is improper.")

¶ 41　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 42　For the foregoing reasons, the judgment of the trial court is reversed.

¶ 43　Reversed and remanded.